[Nos. 69785-0; 69787-6.    En Banc.]
Argued June 12, 2001.    Decided September 19, 2002.

THE STATE OF WASHINGTON, *Respondent*, v. JACOB PATRICK BROWN, *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*, v. MARSHALL C. HARRIS, *Petitioner*.

The State of Washington, *Respondent*, v. LINNIELL PHIPPS, JR., *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*, v. LINNIELL PHIPPS, JR., *Defendant*, LECHAUN DWAYN BAKER, *Petitioner*.

*David B. Koch* (of *Nielsen, Broman & Koch, P.L.L.C.*) and *Gregory C. Link, David L. Donnan*, and *Thomas M. Kummerow* (of *Washington Appellate Project*), for petitioners.

*Norm Maleng, Prosecuting Attorney*, and *Ann M. Summers* and *James M. Whisman, Deputies*, for respondent.

IRELAND, J. — This case determines whether an erroneous accomplice liability jury instruction is subject to harmless error analysis, and if so, whether the instruction was harmless in these consolidated appeals. We hold that an erroneous jury instruction may be subject to harmless error analysis if the error does not relieve the State of its burden to prove each element of the crime charged. An erroneous instruction is harmless if, from the record in a given case, it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. The analysis must be completed as to each defendant and each count charged. The Court of Appeals decision is affirmed in part and reversed in part.

## FACTS

### *State v. Brown*; *State v. Harris*

Jacob Brown's convictions were based on seven counts committed against Lewis Brown, Thomas Boyd, and Jelani

and Jerel Tackett, in three separate incidents. Codefendant Marshall Harris was convicted as a result of his participation in the Lewis Brown incident.

*Lewis Brown*

Porsche Washington and Lewis Brown (Lewis) were involved in an intimate relationship. On September 30, 1996, Porsche called Lewis and arranged to meet him at a Seattle motel. Lewis arrived at about 2 A.M. the following morning, and he complied with Porsche's request that he take off his clothes. Then three men, who Lewis later identified as Jacob Brown (not related to Lewis), Marshall Harris, and Tesino Barber, suddenly came out of the bathroom. Brown was armed with a revolver.

Brown hit Lewis in the chest with his fist, and Barber struck him in the face with a gun that he took from Lewis's coat. Brown and Barber also took Lewis's watch, rings, cell phone, cash, and other personal belongings. Lewis testified that Washington hit him in the face and applied a substance to his anus before Barber forced a dildo into Lewis's anus and mouth and burned Lewis's arm with a hot iron.

Harris signed the motel registration card. Lewis testified that Harris blocked the door to the motel room during the incident and that Harris threatened to beat Lewis.

After Lewis got dressed, Barber took him from the motel room at gunpoint. Barber drove Lewis's car to the Rainier Valley, told the victim to get out, and then drove away. Lewis sought help at a convenience store. He was taken to a hospital and treated for lacerations and burns. When police found Lewis's car several days later, the stereo and speakers had been removed. Lewis was able to identify Brown, Harris, and Barber in police photomontages.

*Thomas Boyd*

In the early morning of October 6, 1996, police responded to reports of gunshots near a residence in Auburn. They discovered the body of Thomas Boyd lying just inside the front door of his home.

When Porsche Washington was arrested on another matter two weeks later, she made a statement to police about Boyd's shooting. As a result, an arrest warrant was issued for Jacob Brown. Brown gave conflicting accounts of Boyd's death, but both Washington and Brown admitted being at or near the residence when Boyd was shot.

In his third statement to police, Brown said that he and Washington had gone to Boyd's house to steal money from him. Brown described how he and Washington worked together. She would pose as a prostitute; he would feign hysteria and demand money for drugs. Victims usually paid Brown in order to get rid of him, but Boyd fought with Brown. Brown stated that while the men were struggling, Washington shot Boyd.

### Jelani and Jerel Tackett

The final incident began in the late evening of October 14, 1996, when Porsche Washington and Ramona Rigney went for a ride with Jelani Tackett and his brother, Jerel. The women asked Jelani to drive them to an apartment and then to a nearby convenience store in Seattle. At the store, Ramona got out. Jacob Brown and Tesino Barber approached the car, and Washington introduced Brown as her brother. At Washington's request, Jelani agreed to take Brown and Washington to their mother's house.

Washington, Brown, and Barber rode in Jelani's car, and Brown directed Jelani to pull to the curb in a residential area. Barber got into the front seat beside Jelani; Washington and Brown conferred behind the parked car.

Brown suddenly appeared at the driver's side window and pointed a gun at Jelani's head. At the same time, Barber demanded his money and jewelry. While Jelani wrestled with Barber, Jerel got out of the car. Brown then grabbed Jerel, put the gun to Jerel's head, and ordered Jelani to get out of the car. Washington and Barber fled.

Brown threatened Jerel and Jelani and told them to walk away. When Jelani pursued Brown and demanded the return of his car keys, Brown ran and fired several shots.

The cases against Brown and Harris were consolidated for trial. On July 31, 1997, a jury found Brown guilty of first degree murder, two counts of first degree robbery, first degree rape, and three counts of first degree assault, with a firearm enhancement rendered on each count. Harris was convicted, in the same court, of first degree robbery, first degree rape, and first degree assault, with a firearm enhancement for each count.

### State v. Phipps and Baker

Charges against Linniell Phipps, Jr., and Lechaun Baker stemmed from a series of events that occurred in the early morning of March 11, 1997.

Curtis Rodgers was visiting two men who lived in a Federal Way motel room. While Rodgers and another man were in the bathroom discussing a drug deal, two men came in through the front door of the room. One of them wore a mask and held a pistol.

The gunman told the occupants of the motel room to lie down on the floor and ordered both men out of the bathroom. The man who accompanied the gunman demanded the keys to a truck that belonged to Alice Manchester, a woman present in the room. The two men left with Rodgers at gunpoint and drove away in the truck.

After going a short distance, the gunman removed his mask and got out of the truck with Rodgers. The other man remained in the driver's seat. The gunman shot Rodgers twice in the abdomen, and the victim fell to the ground. When the driver urged the gunman to hurry up, the gunman fired a shot that grazed the victim's scalp. The two men then left.

Rodgers survived after emergency medical treatment and surgery. He was able to identify the gunman as Linniell Phipps, Jr., and the driver who accompanied him as Phipps' half-brother, Lechaun Baker. Others who had been present in the motel room also identified Phipps and Baker.

On March 23, 1997, Phipps and Baker were stopped and arrested in Phipps' car. When police searched the car, they found the gun used to shoot Rodgers.

On July 14, 1997, a jury found Phipps and Baker guilty of attempted murder in the first degree, first degree robbery, first degree kidnapping, and first degree burglary, with a firearm sentence enhancement for each count.

## PROCEDURAL HISTORY

Brown and Harris appealed their convictions and sentences on numerous procedural and evidentiary grounds. The Court of Appeals affirmed the trial court decision in part, reversed in part, and remanded for further proceedings. The court held that there was insufficient evidence to convict Brown of first degree assault against Jerel Tackett. Accordingly, that conviction was reversed and dismissed. The court also reversed and remanded for new trial Brown's felony murder conviction because there was insufficient evidence to support one of the alternative predicate crimes. Because the State failed to elect the predicate crime or request a unanimity instruction, the defendant's right to a unanimous jury verdict was violated. In addition, the firearms enhancements against Brown and Harris were reversed and remanded to the trial court for resentencing. *State v. Brown*, 100 Wn. App. 104, 106, 995 P.2d 1278 (2000). The State has not cross-appealed any of the decisions of the Court of Appeals.

Phipps and Baker also appealed their convictions and sentences on several grounds. The Court of Appeals affirmed the judgments of conviction and remanded their cases for resentencing. *State v. Phipps*, noted at 100 Wn. App. 1024, 2000 WL 422859 at *10.

On appeal, Brown, Harris, and Baker contested the accomplice liability jury instruction given at their trials. The Court of Appeals held "that the trial court's accomplice liability instruction, if erroneous, was harmless error" as to Brown and Harris. *Brown*, 100 Wn. App. at 106. With

regard to Baker's contention that the instruction given was erroneous, the Court of Appeals stated that "[b]ecause the language of the accomplice liability instruction here did not present an issue at trial, any alleged error was harmless." *Phipps*, noted at 100 Wn. App. 1024, 2000 WL 422859, at *4.

Brown, Harris, Phipps, and Baker each filed a petition for review in this Court. Review of Phipps' petition was denied, and consideration of the remaining petitions was deferred pending final determination in *State v. Roberts*, 142 Wn.2d 471, 14 P.3d 713 (2000) and *State v. Cronin*, 142 Wn.2d 568, 14 P.3d 752 (2000).

The petitions of Brown, Harris, and Baker were then granted review and consolidated.

## ISSUE

Review is limited to the sole issue of "whether an erroneous accomplice liability instruction is subject to harmless error analysis, and if so, whether the instruction was harmless in these cases." Order at 2, *State v. Brown, Harris, and Baker*, No. 69785-0 (Wash. Sup. Ct. Apr. 10, 2001).

## ANALYSIS

In the cases before us, the trial court presented WPIC 10.51 (11 *Washington Pattern Jury Instructions: Criminal* (2d ed. 1994)) to instruct the juries on accomplice liability. The pattern instruction states:

A person who is an accomplice in the commission of a crime is guilty of that crime whether present at the scene or not.

A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of a crime, he or she either:

(1) solicits, commands, encourages, or requests another person to commit the crime; or

(2) aids or agrees to aid another person in planning or committing a crime.

The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.

Clerk's Papers (CP) at 106 (*Brown*), 144 (*Harris*), 86 (*Baker*); WPIC 10.51, at 157.

In contrast, the accomplice liability statute provides in relevant part:

(3) A person is an accomplice of another person in the commission of a crime if:

(a) With knowledge that it will promote or facilitate the commission of the crime, he

(i) solicits, commands, encourages, or requests such other person to commit it; or

(ii) aids or agrees to aid such other person in planning or committing it[.]

RCW 9A.08.020(3)(a).

The trial court instructed the juries that an accomplice must have knowledge that his or her actions will promote or facilitate the commission of "a" crime rather than conforming to the statutory language of "the" crime. Brown, Harris, and Baker (Defendants) contend that by using the term "a crime" instead of "the crime," the court instructed the juries that the Defendants were guilty as accomplices if they knew their actions would promote or facilitate the commission of *any* crime, and not only the crime charged.

■ It is a misstatement of the law to instruct a jury that a person is an accomplice if he or she acts with knowledge that his or her actions will promote *any* crime. The *Roberts* and *Cronin* courts have held that for accomplice liability to attach, a defendant must not merely aid in any crime, but must knowingly aid in the commission of the specific crime charged. *Roberts*, 142 Wn.2d at 509-13; *Cronin*, 142 Wn.2d at 578-80.

■ It is a fundamental precept of criminal law that the prosecution must prove every element of the crime charged beyond a reasonable doubt.[1] Defendants argue that the erroneous accomplice liability instruction permitted the State to obtain guilty verdicts against them without proving every element of the charged offenses beyond a reasonable doubt. They contend that this error is not subject to harmless error analysis, but instead automatically requires reversal of their convictions. We disagree.

Under *Roberts* and *Cronin*, the accomplice liability instruction given in the instant cases was held to be erroneous. In addition, the *Roberts* and *Cronin* courts found the defective instruction was not harmless as to the defendants' aggravated first degree murder convictions because it relieved the State of proving every element of the crime charged. An instruction that relieves the State of its burden to prove every element of a crime requires automatic reversal.[2]

■■ However, not every omission or misstatement in a jury instruction relieves the State of its burden. In that instance, recent decisions of this court have incorporated harmless error analyses. For example, in its discussion of the same accomplice liability instruction that is at issue in the cases before us, the *Cronin* court observed "that the State must prove every essential element of a crime beyond a reasonable doubt for a conviction to be upheld." *Cronin*, 142 Wn.2d at 580. It then noted, "that a conviction cannot stand if the jury was instructed in a manner that would relieve the State of this burden." *Id.* The court went on to determine *"whether the instructional error in these cases*

---

[1] The legislature has codified the State's burden as follows: "Every person charged with the commission of a crime is presumed innocent unless proved guilty. No person may be convicted of a crime unless each element of such crime is proved by competent evidence beyond a reasonable doubt." RCW 9A.04.100(1).

[2] *State v. Smith*, 131 Wn.2d 258, 265, 930 P.2d 917 (1997) ("[F]ailure to instruct on an element of an offense is automatic reversible error."); *State v. Byrd*, 125 Wn.2d 707, 713-14, 887 P.2d 396 (1995) ("The State must prove every essential element of a crime beyond a reasonable doubt for a conviction to be upheld. It is reversible error to instruct the jury in a manner that would relieve the State of this burden." (citations omitted)).

*can be labeled harmless." Id.* (emphasis added). The *Cronin* court answered its question by concluding as follows: "[W]e hold that the trial court's jury instruction regarding accomplice liability in both *State v. Bui*[*, 142 Wn.2d 568, 14 P.3d 752 (2000)]* and *State v. Cronin* was legally deficient. We also hold that the instructional error was not harmless in either case." *Id.* at 586.

In *State v. Stein,* the jury was instructed under the alternative theories of conspiracy and accomplice liability. 144 Wn.2d 236, 241, 27 P.3d 184 (2001). In its determination that the trial court's conspiracy instructions were erroneous, the *Stein* court also undertook a harmless error analysis: "Instructional error is presumed to be prejudicial *unless it affirmatively appears to be harmless." Id.* at 246 (emphasis added).

The United States Supreme Court has held that an erroneous jury instruction that omits an element of the offense is subject to harmless error analysis:

> Unlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.

*Neder v. United States,* 527 U.S. 1, 9, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). We find no compelling reason why this Court should not follow the United States Supreme Court's holding in *Neder.*

As evidenced by *Roberts* and *Cronin,* even in cases where there are multiple crimes charged and multiple defendants as to some charges, the use of an erroneous instruction may be harmless.

Another instruction in the cases before us admonished the juries as follows:

> A separate crime is charged against one or more of the defendants in each count. The charges have been joined for trial. You must decide the case of each defendant or each crime charged against that defendant separately. Your verdict on any

count as to any defendant should not control your verdict on any other count or as to any other defendant.

CP at 104 (*Brown*), 142 (*Harris*), 66 (*Baker*).

In order to conduct its analysis, the *Neder* court set forth the following test for determining whether a constitutional error is harmless: "[W]hether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Neder*, 527 U.S. at 15 (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)). When applied to an element omitted from, or misstated in, a jury instruction, the error is harmless if that element is supported by uncontroverted evidence. *Neder*, 527 U.S. at 18.

Therefore, we must thoroughly examine the record before us as to each defendant. In order to hold the error harmless, we must "conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error." *Id.* at 19.

*Jacob Brown*

The Court of Appeals' rulings reversed and remanded Brown's murder conviction for a new trial and reversed and dismissed his conviction for first degree assault against Jerel Tackett. The State did not cross-appeal. Therefore, we must complete harmless error analyses only concerning the remaining charges, including first degree robbery, first degree assault, and first degree rape against Lewis Brown, and first degree robbery and first degree assault against Jelani Tackett.

In the robbery of Lewis Brown, the record shows that Jacob Brown struck the victim, took his personal property, and held him at gunpoint. Because Brown acted as a principal in the robbery, the difference between "a crime" and "the crime" in the accomplice instruction is harmless beyond a reasonable doubt. However, as to the charges of rape and assault against the same victim, there is no evidence of direct participation by Brown as a principal. Under the accomplice instruction given, the jury might

have concluded that because Brown robbed the victim, he was guilty as an accomplice to the rape and assault. The instruction was not harmless, and Brown must have a new trial, with a proper accomplice instruction, as to the rape and assault of Lewis Brown.

In the robbery and assault of Jelani Tackett, it is clear from the record that Brown was a principal as to both charges. In these instances, the erroneous accomplice instruction is again harmless beyond a reasonable doubt.

In sum, we affirm the Court of Appeals' reversal and remand for a new trial on the murder charge. We reverse and remand for a new trial on the additional charges of Lewis Brown's rape and assault. We affirm the reversal and dismissal of the assault charge as to Jerel Tackett. We affirm Brown's convictions for the robbery of Lewis Brown and for the robbery and assault of Jelani Tackett. We affirm the remand to the trial court of Brown's firearms enhancements for resentencing in light of *In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 254, 955 P.2d 798 (1998).

*Marshall Harris*

All the charges against Marshall Harris—first degree robbery, first degree rape, and first degree assault—were based on accomplice liability in the Lewis Brown incident. Evidence was presented at trial that Harris rented the motel room for Porsche Washington, hid in the bathroom with Brown and Barber, and burst into the room after the victim had undressed. There was testimony that Harris verbally threatened the victim and may have discouraged him from escaping during the robbery and sexual assault by standing in front of the door.

The record indicates that Harris did not touch Lewis Brown or actively participate in the robbery, assault, or rape. He was, at most, an accomplice to the crimes charged. Based on the erroneous instruction given, the jury could have convicted Harris for all of the crimes if it concluded that he was an accomplice to *any* of the crimes. The instruction was not harmless, and Harris must have a new trial as to all counts.

In sum, we reverse and remand for a new trial on the robbery, rape, and assault charges with a proper accomplice instruction.

*Lechaun Baker*

Baker was charged with four crimes. In three of them—robbery, kidnapping, and burglary—the evidence establishes that Baker acted as a principal. Baker unlawfully entered the motel room with Phipps with the intent to commit a crime. Baker was the principal actor in the robbery because he took the keys to the truck from Manchester. Baker was as active as his codefendant in ordering Rodgers out of the room and into the vehicle, which Baker drove. Under these facts, any error in the accomplice instruction as to robbery, kidnapping, and burglary is harmless beyond a reasonable doubt.

With respect to the attempted murder charge, Baker did not pull the trigger, even though he fully participated in the events leading up to the shooting. A jury could conclude that Baker's assistance in delivering the victim to the scene of the shooting, coupled with what the prosecution characterized as his shouted encouragement, was sufficient to show his shared general intent to justify his liability as an accomplice in the crime of attempted murder. But under the erroneous instruction, a jury could also believe that Baker was guilty of attempted murder because he was guilty as a principal in the robbery, kidnapping, and burglary. It cannot be said that the erroneous jury instruction was harmless. Therefore, Baker must have a new trial on the attempted murder charge with a proper accomplice instruction.

In sum, Baker's convictions for robbery, kidnapping, and burglary are affirmed. We reverse and remand for a new trial on the attempted murder charge. We affirm the remand to the trial court of Baker's firearms enhancements for resentencing in light of *In re Post Sentencing Review of Charles.*

## CONCLUSION

Under recent Washington case law, as well as *Neder v. United States*, an erroneous jury instruction that omits or misstates an element of a charged crime is subject to harmless error analysis to determine whether the error has not relieved the State of its burden to prove each element of the case. To determine whether an erroneous instruction is harmless in a given case, an analysis must be completed as to each defendant and each count charged. From the record, it must appear beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.

The accomplice liability instruction at issue in the cases before us is not harmless as to some of the charges against the defendants. Therefore, we reverse and remand for a new trial on the charges that Defendant Brown raped and assaulted Lewis Brown. We reverse and remand for a new trial on the robbery, rape, and assault charges against Defendant Harris. We also reverse and remand for a new trial on Defendant Baker's attempted murder charge. As to the remaining charges, the Court of Appeals is affirmed.

JOHNSON, BRIDGE, CHAMBERS, and OWENS, JJ., concur.

MADSEN, J., concurs in the result.

CHAMBERS, J. (concurring in result) — Because I feel constrained by this court's disposition in *State v. Borrero*, 147 Wn.2d 353, 58 P.3d 245 (2002), I concur in result. However, I continue to adhere to the views I expressed in my *Borrero* concurrence/dissent.

SANDERS, J. (dissenting) — The majority opinion represents an unwarranted departure from prior precedent, holding an instruction which relieves the State of its burden to prove every essential element of an offense may be subject to harmless error analysis and is not reversible error per se. This holding contradicts ample precedent. *See, e.g., State v. Smith*, 131 Wn.2d 258, 265, 930 P.2d 917 (1997) ("failure to instruct on an element of an offense is automatic

reversible error"); *State v. Eastmond*, 129 Wn.2d 497, 502, 919 P.2d 577 (1996) ("By omitting an element of the crime of assault, the trial court here committed an error of constitutional magnitude."); *State v. Byrd*, 125 Wn.2d 707, 713-14, 887 P.2d 396 (1995) ("The State must prove every essential element of a crime beyond a reasonable doubt for a conviction to be upheld. It is reversible error to instruct the jury in a manner that would relieve the State of this burden." (citations omitted)); *State v. Pope*, 100 Wn. App. 624, 630, 999 P.2d 51 ("A harmless error analysis is never applicable to the omission of an essential element of the crime in the 'to convict' instruction. Reversal is required."), *review denied*, 141 Wn.2d 1018 (2000).

We recently affirmed, "when assessing the impact of an instructional error, reversal is *automatic* unless the error ' "is trivial, or formal, or merely academic, and was not prejudicial to the substantial rights of the party assigning it, and in no way affected the final outcome of the case." ' " *State v. Townsend*, 142 Wn.2d 838, 848, 15 P.3d 145 (2001) (emphasis added) (quoting *State v. Golladay*, 78 Wn.2d 121, 139, 470 P.2d 191 (1970), *overruled on other grounds by State v. Arndt*, 87 Wn.2d 374, 553 P.2d 1328 (1976) (quoting *State v. Britton*, 27 Wn.2d 336, 341, 178 P.2d 341 (1947))). But here the majority does not claim the instructional error in the consolidated cases to be "trivial, or formal, or merely academic, . . . and in no way affect[ing] the final outcome of the case[s]." *Britton*, 27 Wn.2d at 341. Yet it still refuses to reverse Brown's convictions for the robbery of Lester Brown and robbery and assault of Jelani Tackett, as well as Baker's convictions for kidnapping, burglary, and robbery. Majority at 342, 343.

The majority rests this result on the false premise that "not every omission or misstatement in a jury instruction relieves the State of its burden" to prove every element of the crime charged. Majority at 339-40. This claim, used to legitimize the majority's application of a harmless error analysis, is not only a startling departure from prior precedent, *see supra* at 344, but is also unsupported by the very

authority on which the majority relies to justify its approach. *See* majority at 340 (citing *State v. Cronin*, 142 Wn.2d 568, 14 P.3d 752 (2000); *State v. Bui*, 142 Wn.2d 568, 14 P.3d 752 (2000), consolidated on review with *Cronin*; *State v. Stein*, 144 Wn.2d 236, 27 P.3d 184 (2001); *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999).

In *Cronin, Bui*, and *Stein* this court acknowledged and applied the rule of automatic reversal for failure to instruct on every element of the offense charged. *Cronin*, 142 Wn.2d at 581 (*Cronin*), 582 (*Bui*); *Stein*, 144 Wn.2d at 247-48. We did not engage in a quantitative evaluation of the untainted evidence.[3] *Id. Cronin* and *Bui* are particularly germane because they involved the same instructional error of which the defendants in the current cases now complain. *Cronin*, at 570; majority at 338.

Cronin was convicted of premeditated first degree murder as an accomplice. *Cronin*, 142 Wn.2d at 577. At trial the jury was erroneously instructed it could find Cronin guilty as an accomplice to first degree murder so long as he was an accomplice to " 'a crime' " (as opposed to " 'the crime' ") committed by his confederate. *Id.* at 579. The State argued even if the instruction was erroneous, it was harmless. *Id.* We disagreed:

> " '[t]he State must prove every essential element of a crime beyond a reasonable doubt for a conviction to be upheld. It is reversible error to instruct the jury in a manner that would relieve the State of this burden.' "

*Id.* at 580 (quoting *State v. Jackson*, 137 Wn.2d 712, 727, 976 P.2d 1229 (1999) (quoting *Byrd*, 125 Wn.2d at 713-14)). We observed, "to convict Cronin as an accomplice to pre-

---

[3] Our majority also appears to be overruling sub silentio *State v. Easter*, 130 Wn.2d 228, 242, 922 P.2d 1285 (1996), holding the presumption of harm resulting from an error of constitutional magnitude can be overcome only if the court is "convinced beyond a reasonable doubt any reasonable jury would reach the same result absent the error, *and* where the untainted evidence is so overwhelming it necessarily leads to a finding of guilt." (Emphasis added.) (Citations omitted.) Here our majority abandons the first prong of the harmless error test, focusing exclusively on the evidence in the record that could sustain a guilty verdict. *See* majority at 341-43.

meditated murder, the State had to prove beyond a reasonable doubt that Cronin had general knowledge that he was aiding in the commission of the crime of murder." *Id.* at 581-82 (citing *State v. Rice*, 102 Wn.2d 120, 125, 683 P.2d 199 (1984); *State v. Davis*, 101 Wn.2d 654, 682 P.2d 883 (1984)). Because the accomplice instruction given permitted the jury "to convict Cronin of premeditated murder merely if it found that he knew he promoted or facilitated 'the commission of *a crime,*' " the error effectively "relieved the State of the burden of having to prove beyond a reasonable doubt that Cronin knew he was facilitating the crime of murder, [and thus] the instructional error cannot be deemed harmless." *Cronin*, 142 Wn.2d at 582.

Likewise in *Bui* we held an instructional error required automatic reversal. 142 Wn.2d at 581. Bui was convicted on three counts of first degree assault on the basis of accomplice liability. *Id.* at 573. Again, the accomplice instruction referred to "a crime" rather than "the crime." *Id.* at 572. We found "the jury instruction may have allowed the State to secure a conviction without having to prove beyond a reasonable doubt that Bui knew he was facilitating the commission of the crime of assault. Alleviating the State of this burden cannot be said to be error that is harmless." *Id.* at 581.

Finally, *Stein* is particularly instructive because we not only required an automatic reversal for an instructional error, we also refused to consider whether there was substantial evidence to support an alternative theory of liability on which the jury also had been instructed. *Stein*, 144 Wn.2d at 247. *Stein* reversed a conviction because the jury had been instructed it could convict the defendant on either a theory of conspiracy under the *Pinkerton [Pinkerton v. United States*, 328 U.S. 640, 66 S. Ct. 1180, 90 L. Ed. 2d 1489 (1946)] doctrine or accomplice liability. *Id.* at 248. We rejected the *Pinkerton* doctrine as incompatible with Washington law on complicity.[4] *Stein*, 144 Wn.2d at 238. Thus,

---

[4] Under the *Pinkerton* doctrine a defendant is responsible for reasonably foreseeable acts committed by coconspirators. *State v. Stein*, 144 Wn.2d 236, 243,

we held it was error to submit the instruction based on the *Pinkerton* doctrine because the latter improperly relieved the state of its burden to prove the defendant knew his actions would promote or facilitate the commission of the crime committed by his coconspirators. *Id.* at 245.

We specifically rejected the State's argument that the error in the conspiracy instructions was harmless where it arose as one of two theories of liability and the alternative theory was supported by substantial evidence, *id.* at 246, stating:

> When a defendant is convicted under alternative theories, one acceptable and the other based on an erroneous instruction, *this court has not been willing to substitute its judgment for that of the jury by inferring that the verdict was reached under the correct instruction. State v. MacMaster*, 113 Wn.2d 226, 234, 778 P.2d 1037 (1989) (reversing and remanding when the jury convicted the defendant of vehicular homicide under alternative theories, one of which did not require alcohol intoxication to be the proximate cause). *See also State v. Green*, 94 Wn.2d 216, 616 P.2d 628 (1980) (reversing and remanding where the defendant was convicted of aggravated first degree murder under alternative theories of rape or kidnapping and there was insufficient evidence to support the kidnapping charge).

*Id.* at 247 (emphasis added).

Here the State tried the defendants under alternative theories as principals or accomplices in the charged crimes.[5] The instruction the State submitted on the latter

---

27 P.3d 184 (2001). In Washington conspiracy is predicated on accomplice liability. *Id.* at 248. "Knowledge of the particular crime committed is an essential element of accomplice liability." *Id.* Because the *Pinkerton* doctrine allows for a conviction based on the foreseeability of the crimes, rather than knowledge of the particular crime charged, "the *Pinkerton* doctrine is inapplicable to Washington law." *Id.*

[5] We have previously held accomplice liability does not constitute an *alternative means* of committing a crime because anyone who participates in the commission of a crime is guilty of the crime and should be charged as a principal. *State v. McDonald*, 138 Wn.2d 680, 687-88, 981 P.2d 443 (1999). However, it is indisputable that accomplice liability is an *alternative theory* of liability requiring a jury to reach different findings than it would if it were determining liability as a principal. RCW 9A.08.020(3) (defining elements of accomplice liability); *see also State v. Jackson*, 137 Wn.2d 712, 727, 976 P.2d 1229 (1999) (granting automatic reversal where the trial court improperly instructed the jury on accomplice

theory was legally deficient because it relieved the State of its burden to prove one of the essential elements of the charged crimes. *See* majority at 338-39 (state not required to prove defendant acted with knowledge that his or her actions will promote the charged crime).

*Cronin, Bui,* and *Stein* dictate the path we must follow. When an instructional error relieves the State of its burden to prove every element of the offense charged beyond a reasonable doubt, the error requires a new trial. *Cronin,* 142 Wn.2d at 582; *Stein,* 144 Wn.2d at 248. Reversal is required in spite of other evidence against the defendants, when as here, one of the theories on which the state tried its case was legally deficient because we cannot presume "the verdict was reached under the correct instruction." *Stein,* 144 Wn.2d at 247.

However even if an erroneous accomplice liability instruction were subject to harmless error analysis, our majority departs from binding Washington precedent which precludes harmless error analysis where, as here, the jury may have reached its verdict on an erroneous theory of

---

liability, reasoning "we do not know . . . for certain [whether the jury found one or both of the defendants guilty as a principal] because the special interrogatory forms that were used by the jury in rendering its verdict do not indicate whether the jury found the defendant guilty as a principal or as an accomplice.").

The petitioner in *McDonald* claimed the trial court erred in instructing the jury it could convict him as a principal or an accomplice, when allegedly there was not substantial evidence he acted as a principal. *McDonald,* 138 Wn.2d at 687-88. We held even if there were not substantial evidence the petitioner acted as a principal, there was no error because "principal and accomplice liability are not alternative means of committing a single offense." *Id.* at 687. *McDonald* is distinguishable from the current cases, however, because McDonald admitted to participating in the charged crime. *Id.* at 685. Here the defendants did not admit to any participation in the charged crimes; yet the jury instructions allowed the jury to convict the defendants on an erroneous theory of accomplice liability. Because we cannot know whether the jury convicted them as principals or under a legally deficient accomplice liability theory, reversal is required. *Stein,* 144 Wn.2d at 247; *Jackson,* 137 Wn.2d at 727.

liability. *See supra* at 347-49. The majority claims Brown acted as a principal in the crimes of first degree robbery and first degree assault of Jelani Tackett and first degree robbery of Lewis Brown, and Baker acted as a principal in the crimes of first degree burglary, first degree robbery, and first degree kidnapping. Majority at 341, 342, 343. It concludes reversal is not required as to those convictions because the instruction on accomplice liability had no effect. *Id.* at 342, 343. It justifies its departure by citation to *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). Majority at 340.

In *Neder* the defendant was charged with violating a number of federal criminal statutes penalizing fraud. *Neder*, 527 U.S. at 4. When the district court instructed the jury with respect to those charges involving tax fraud, it erroneously omitted the element of materiality. *Id.* The issue was submitted to the trial judge, outside the presence of the jury, who concluded on the evidence the element was met. *Id.* at 6. Neder was convicted and appealed. The Court of Appeals affirmed. *Id.* at 6-7. Neder again appealed and the Supreme Court granted certiorari to determine "whether, and under what circumstances, the omission of an element from the judge's charge to the jury can be harmless error." *Id.* at 7.

The Supreme Court observed while the harmless error test applies to most errors there are "a limited class of fundamental constitutional errors that 'defy analysis by "harmless error" standards.' " *Neder*, 527 U.S. at 7 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991)). However, in that case the Court concluded, "an instruction that omits an element of the

offense" is subject to harmless error analysis because it "does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Neder*, 527 U.S. at 9. Finding the evidence the government submitted to the trial judge against Neder was overwhelming and uncontroverted, it concluded the error was harmless beyond a reasonable doubt, stating:

> In a case such as this one, where a defendant did not, and apparently could not, bring forth facts contesting the omitted element, answering the question whether the jury verdict would have been the same absent the error does not fundamentally undermine the purposes of the jury trial guarantee.

*Id.* at 19.

Our majority's reliance on *Neder* is misplaced. First, the defendant in *Neder* was convicted in federal court for committing federal crimes (mail and wire fraud) and was therefore subject to the federal harmless error rule. *Neder*, 527 U.S. at 7. Brown and Baker have been convicted of committing crimes against the State of Washington and our cases have long held an instruction which relieves the state of its burden to prove every element of the offense is not harmless error.[6] *See, e.g., McClaine v. Territory of Wash.*, 1 Wash. 345, 355, 25 P. 453 (1890). Moreover, *Neder* itself concluded the error was harmless only because it was based on overwhelming and uncontroverted evidence, *Neder*, 527 U.S. at 19, which is not the situation here.

---

[6] We would not be the first court to distinguish *Neder* on this basis. *See Johnson v. State*, 768 So. 2d 934, 938 (Miss. Ct. App. 2000) ("Additionally, *Neder* addressed this issue under federal law and the Federal Rule of Criminal Procedure Rule 52 which is not the situation in the case at bar."), *cert. denied*, 532 U.S. 930 (2001).

Our majority does not claim there is overwhelming and uncontroverted evidence of the omitted element with respect to the convictions it affirms,[7] nor can it. The requirement of uncontroverted evidence presumes an opportunity to present evidence to contradict the government's evidence on a particular issue. The defendant in *Neder* had such an opportunity but failed to produce contrary evidence. *Id.* at 6.

However, here Brown and Baker were prosecuted before we published *State v. Roberts*, 142 Wn.2d 471, 14 P.3d 713 (2000), holding to convict on an accomplice liability theory requires proof that for each of the charged crimes the alleged accomplice had knowledge that his or her actions would promote or facilitate the commission of the charged crime. In their trials the state neither argued nor presented evidence to support this element. *See State v. Brown* Verbatim Report of Proceedings (VRP) (July 31, 1997) at 30-71 (state's closing argument); *Baker* VRP (July 9, 1997) at 38-85 (same). It would be senseless to call the evidence incidentally bearing on this issue "overwhelming and uncontroverted" when the issue was not even before the court and the defendants had neither opportunity nor cause to contest it.

Thus, even under *Neder*, we cannot conclude beyond a reasonable doubt the jury would have convicted Baker and Brown had the trial court properly instructed it on the law.

For these reasons, the majority's application of harmless error analysis is improper. I dissent.

---

[7] The majority affirms Jacob Brown's conviction for first degree robbery against Lewis Brown and first degree robbery and first degree assault against Jelani Tackett and Baker's conviction for first degree robbery, first degree burglary, and first degree kidnapping.

ALEXANDER, C.J., and SMITH, J., concur with SANDERS, J.

Reconsideration denied November 26, 2002.