FILED
COURT OF APPEALS
DIVISION II

2013 NOV 13 AM 11: 18

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43368-1-II |
| Respondent, | |
| v. | |
| K.M., | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — KM appeals his juvenile adjudication for custodial assault. He argues that (1) admission of improper opinion testimony of guilt invaded the fact finder's province and (2) the heightened common law self-defense standard for custodial assault violates the separation of powers doctrine. Because (1) this was a bench trial and we presume the court does not consider inadmissible evidence, (2) any admission of the opinion of guilt testimony was harmless, and (3) any potential error in applying the heightened self-defense standard was also harmless, we affirm.

## FACTS

### I. THE ASSAULT

On February 26, 2012, Juvenile Detention Officer Bradley Sean Kilmer escorted 14-year-old KM from the Mason County Juvenile Detention Facility to the hospital to evaluate a broken

nose.[1] On their way out of the detention center, KM yelled back when a group of juveniles in the parking lot yelled at him; Officer Kilmer told KM that he could not speak to people while being transported. KM had been advised of this restriction before leaving the detention facility. Despite Officer Kilmer's admonition, KM spoke to another juvenile while at the hospital.

When they reentered the detention center and were standing in a small entry area between two secured doors, Officer Kilmer advised KM that "he was dropped to a 'level one'"[2] because he had failed to follow the rules by speaking to people outside the facility. Clerk's Papers (CP) at 19. At this time, KM, who was wearing waist chains and leg irons, was standing in front of and to the right of Officer Kilmer. KM turned, swore at Officer Kilmer, doubled up both of his (KM's) fists, aggressively "got in Officer Kilmer's face," angrily "slammed his chest into Officer Kilmer," and pushed the officer into the wall. CP at 19; Verbatim Report of Proceedings. (VRP) at 5, 8, 22, 24.

Officer Kilmer attempted to restrain KM by grabbing KM's hair, but he lost his grip and his arm moved down to KM's neck/shoulder area. As KM struggled, Officer Kilmer managed to push KM into the wall, but Officer Kilmer's left hand became entangled in KM's restraints. Officer Mike Arnold came to Officer Kilmer's assistance, restrained KM and released Officer Kilmer's entangled hand. When the officers returned KM to his cell, KM told Officer Arnold, "'[T]hat fat fuck dropped me,'" referring to Officer Kilmer's dropping KM's security level. CP

---

[1] Most of the facts are drawn from the juvenile court's unchallenged findings of fact, which are verities on appeal. *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994).

[2] The facility had four security levels. At level one, the detainee must spend 23 hours a day in his cell.

at 20. KM also made other threatening comments directed to Officer Kilmer. Officer Kilmer suffered a sprained wrist and torn ligaments.

## II. JUVENILE COURT BENCH TRIAL

The State charged KM with custodial assault occurring in a juvenile facility.[3] The case proceeded to a bench trial in a juvenile court.

During trial, the State asked Officer Kilmer whether KM was "in actual imminent danger of serious injury at any time prior to the scuffle you described?" VRP at 10. Officer Kilmer responded that KM was not. KM did not object to the State's question or to Officer Kilmer's response.

Officer Christina Torre also testified for the State. She had observed a large portion of the physical alteration on the monitors in the control room as she was opening the doors to admit KM and Officer Kilmer into the facility. But she had turned away and was not looking at the monitor until after KM began shouting obscenities at Officer Kilmer. When she looked back to the monitor, she saw Officer Kilmer pushing KM against the wall and then saw KM "push off the wall and start pulling away from Officer Kilmer." VRP at 33. She also saw KM and Officer Kilmer struggle and observed that at one point Officer Kilmer's arms were around KM's neck, in the "head and neck area." VRP at 33. KM managed to break Officer Kilmer's grip and then "proceeded to push his body into Officer Kilmer and get close to his face and proceed to yell" more obscenities at the officer. VRP at 33-34. She observed Officer Kilmer "proceed to try to

---

[3] RCW 9A.36.100(1)(a).

gain control of [KM] by taking control of his head and neck area." VRP at 34. At this point, Officer Arnold arrived, and the two officers were able to restrain KM.

Officer Arnold also testified that he became aware of the altercation when he heard KM start swearing at Officer Kilmer. When Officer Arnold arrived, he saw Officer Kilmer struggling with KM; Officer Kilmer's left shoulder was against the wall and his left arm was "around [KM's] upper body, neck area, and [KM] was struggling back and forth and got right up in [Officer Kilmer's] face" and swore at Officer Kilmer. VRP at 54. When he went to Officer Kilmer's assistance, Officer Arnold noticed that Officer Kilmer's hand was stuck in KM's restraints. Officer Arnold helped release Officer Kilmer's hand and separated Officer Kilmer and KM. During this testimony, the State asked Officer Arnold, "From where you were standing during this incident, was [KM] in imminent danger of serious injury prior to the confrontation between him and Mr. Kilmer?" VRP at 56. The juvenile court overruled KM's objection on relevancy grounds. Officer Arnold responded, "I would say no." VRP at 56.

KM testified in his defense. Although he admitted that he turned his head and swore at Officer Kilmer when the officer told him (KM) that he was dropping his security status, KM denied touching Officer Kilmer first. Instead, KM asserted that Officer Kilmer had initiated the physical contact by placing his arm across KM's face, including the bridge of his broken nose, and that Officer Kilmer's arm slipped down to his neck area when KM lifted his head to avoid contact with his nose. KM stated that Officer Kilmer's hold was choking him and that he repeatedly told the officer to stop choking him. KM further testified that when Officer Kilmer's arm went across the bridge of his nose, he felt a "stinging feeling in [his] nose," and he rated the pain as a six on a scale of one to ten. VRP at 83. KM stated that before this, his pain level was a

three. VRP at 84. And he asserted that the only time he intentionally touched Officer Kilmer was "in self[-]defense, because [the officer] contacted [him] first" and touched him in "a hurtful manner." VRP at 85.

The juvenile court found that the evidence established an assault and concluded that "[s]elf-defense does not apply *because the respondent initiated contact* and because the respondent took an aggressive stance against a Detention Officer in a juvenile detention facility[; t]he respondent was not in imminent danger under the law." CP at 20 (emphasis added). KM appeals.

## ANALYSIS

### I. OPINION OF GUILT TESTIMONY

KM first argues that Officers Kilmer and Arnold's[4] testimonies about whether KM was in actual imminent danger of serious injury was improper opinion of guilt testimony that invaded the fact finder's province and denied him his Fourteenth Amendment due process rights. Even presuming, but not deciding that this is manifest constitutional error that we may address despite KM's failure to object,[5] this argument fails.[6]

---

[4] KM incorrectly identifies Officer Torre as the officer involved in this testimony. *See* Br. of Appellant at 6. But the record clearly shows that the relevant testimony was Officer *Arnold*'s testimony, not Officer Torre's. VRP at 56.

[5] *See* RAP 2.5(a).

[6] KM also argues that if we refuse to address this alleged error because it was not preserved for review, his trial counsel provided ineffective assistance in failing to object to this testimony. Because we address this issue directly, we do not address KM's related ineffective assistance of counsel claim.

No. 43368-1-II

Because this was a bench trial, we presume the juvenile court did not consider inadmissible evidence in reaching its verdict. *State v. Read*, 147 Wn.2d 238, 244, 53 P.3d 26 (2002) (citing *State v. Miles*, 77 Wn.2d 593, 464 P.2d 723 (1970)). KM could rebut this presumption by showing that there is insufficient admissible evidence to support the verdict or that "the trial court relied on the inadmissible evidence to make essential findings that it otherwise would not have made." *Read*, 147 Wn.2d at 245-46. But KM does not argue that the admissible evidence is insufficient to support the verdict; nor does the record show that is the case. And the juvenile court's findings of fact or conclusions of law do not suggest that the juvenile court considered these testimonies. Furthermore, because the juvenile court concluded that self[-]defense did not apply because KM "initiated contact," CP at 20, or, in other words, that KM was the first aggressor,[7] the testimony—which related solely to KM's self-defense claim—was irrelevant to the juvenile court's guilty finding and any error is therefore harmless beyond a reasonable doubt.[8] *See State v. We*, 138 Wn. App. 716, 158 P.3d 1238 (2007), *review denied*, 163 Wn.2d 1008 (2008). Accordingly, this argument fails.

---

[7] *See State v. Riley*, 137 Wn.2d 904, 909, 976 P.2d 624 (1999) ("[I]n general, the right of self[-]defense cannot be successfully invoked by an aggressor or one who provokes an altercation.").

[8] To find an error harmless beyond a reasonable doubt, from the record, an appellate court must find that the alleged error did not contribute to the verdict. *State v. Brown*, 147 Wn.2d 330, 344, 58 P.3d 889 (2002).

6

## II. Heightened Self-defense Standard

KM next argues that the judicially-created, actual danger/serious injury self-defense standard that applies in cases involving custodial assault violates the separation of powers doctrine because the legislatively-created statutory defense in RCW 9A.16.020 does not include this heightened self-defense standard. This argument also fails.

As discussed above, the juvenile court did not rely exclusively on its conclusion that KM's self-defense claim failed. Instead, the juvenile court also concluded that KM was the first aggressor and, therefore, not entitled to assert self-defense. Accordingly, even if the heightened self-defense standard for custodial assault is invalid because it violates the separation of powers doctrine, any potential error was clearly harmless under the constitutional harmless error standard. *State v. Brown*, 147 Wn.2d 330, 344, 58 P.3d 889 (2002).

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Johanson, J.

We concur:

_____
Hunt, J.

_____
Worswick, C.J.

7