FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 OCT -8 AM 9: 39




# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THE STATE OF WASHINGTON,

Respondent,

v.

ERIC LAMAR JACKSON,

Appellant.

No. 76657-1-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: October 8, 2018

APPELWICK, C.J. — Jackson was convicted of physical control of a vehicle while under the influence and possession of a controlled substance. He argues that the evidence was insufficient to convict him of physical control of a vehicle while under the influence, because no rational jury could have found that he failed to prove the affirmative defense—that he was safely off the roadway. And, he argues that the "to convict" instruction for the charge of unlawful possession of a controlled substance omitted an essential element, because it failed to identify the controlled substance he possessed. He asserts that this error was not harmless as to the conviction or sentence. We affirm the convictions, but remand for resentencing on the unlawful possession of a controlled substance conviction.

## FACTS

On February 29, 2016, King County Sherriff deputies were dispatched to the Crowne Plaza Hotel on International Boulevard in SeaTac. When they arrived,

they saw a silver car blocking a driveway. A man, later identified as Eric Jackson, was in the driver's seat.

The area where the deputies located the vehicle is not a public roadway, but a driveway to the hotel. The driveway, which runs east to west (perpendicular to the public roadway, that runs north to south), is a two lane driveway, one lane for ingress and one lane for egress. Gate arms restrict ingress and egress to the parking area. A few marked parking spaces are located on the north side of the driveway, between the parking lot gate and the street. On the south side of the driveway is a curb and a fence. Jackson's vehicle was facing toward the public roadway (on the south side, blocking incoming traffic). There was at least a car length between the street and his vehicle.

Deputy Anthony Lopez noticed that Jackson appeared to be asleep and knocked on the window to get his attention. Deputy Lopez asked Jackson to step out of the car because he suspected that Jackson was intoxicated, and his car was blocking the driveway. Lopez asked Jackson to perform field sobriety tests. Jackson was not able to complete the horizontal gaze nystagmus (HGN) test. Lopez testified that during the test Jackson "kept moving his head, kept dropping his head, [and] was swaying." Lopez also noticed that Jackson's eyes were "extremely watery."

The deputies arrested Jackson. Deputy Lopez testified that, during the search incident to Jackson's arrest, he found a pistol and a bag of crack cocaine. Lopez did not remember where he found the bag of suspected cocaine. Lopez also testified that during his initial frisk of Jackson he mistook Jackson's gun for a

cellphone. The deputies also found a "bubble packet" of medication, later identified as diazepam, in Jackson's car.[1] The deputies got a warrant to draw blood from Jackson. Deputy Lopez took Jackson to Harborview Medical Center, where a nurse administered the blood draw. A blood test showed that Jackson had cocaine and diazepam in his system.

The State charged Jackson with unlawful possession of a firearm, two counts of possession of a controlled substance—one count for possession of cocaine and one count for possession of diazepam—and physical control of a vehicle while under the influence. After the court granted the motion to suppress the diazepam evidence, the State asked the court to dismiss the charge of possession of diazepam. The charge was dismissed. The jury found Jackson not guilty of unlawful possession of a firearm, but guilty of possession of a controlled substance, cocaine and of physical control of a vehicle while under the influence. Jackson appeals.

## DISCUSSION

Jackson makes three arguments. First, he argues that the evidence was insufficient to convict him of physical control of a vehicle while under the influence. Second, he argues that the to convict instruction for possession of a controlled substance unconstitutionally relieved the State of its burden of proof, because it did not specify cocaine as the controlled substance. Third, he argues that, even if his conviction of possession of a controlled substance is affirmed, this court should

---

[1] At trial, the court granted Jackson's motion to suppress evidence of the diazepam.

reverse his sentence because the sentence does not comport with the jury's verdict.

## I. Sufficiency of Evidence

Jackson contends that the evidence was insufficient to prove actual physical control while under the influence because he proved the affirmative defense—that he was parked safely off the roadway in a private driveway. The sufficiency of the evidence is a question of constitutional law that the appellate court reviews de novo. State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016).

In order to be found guilty, the State had to prove that Jackson had actual physical control of the vehicle while he was under the influence of or affected by alcohol or any drug. RCW 46.61.504(1)(c). It is an affirmative defense to a charge of physical control that "prior to being pursued by a law enforcement officer, the person has moved the vehicle safely off the roadway." RCW 46.61.504(2). The inquiry for this court is whether, considering the evidence in the light most favorable to the State, a rational trier of fact could have found that the accused failed to prove the affirmative defense by a preponderance of the evidence. City of Spokane v. Beck, 130 Wn. App. 481, 486, 123 P.2d 854 (2005).

In Beck, the defendant's car was running and parked, taking up two spaces in a parking lot, 20 to 30 yards from the roadway. Id. at 484. The defendant called for a ride before she fell asleep in the driver's seat. Id. at 488. An officer arrested the defendant for physical control of a vehicle while under the influence. Id. at 484, 486. The arresting officer acknowledged at trial that the defendant's car was "off the roadway and there was no danger." Id. at 484. This court held that the

4

evidence was insufficient for a jury to conclude that Beck did not prove the defense, that she was safely off the roadway, by a preponderance of the evidence. Id. at 483, 488.

The court in Beck distinguished the facts of that case from those in City of Edmonds v. Ostby, 48 Wn. App. 867, 740 P.2d 916 (1987). Beck, 130 Wn. App. at 488. In Ostby, an officer found the defendant passed out behind the wheel of a car in an apartment complex's parking lot. 48 Wn. App. at 868. The car was running, its lights were on, and it was still in gear. Id. "The vehicle was not in a parking stall, but was situated in the middle of the roadway, blocking access to adjoining parking areas and buildings." Id. This court stated, "[T]he physical control statute can apply to an intoxicated driver apprehended on private property." Id. at 870. Then, it held that "[w]hether the vehicle was 'safely off the roadway' is a factual issue to be decided by the trier of fact." Id. (quoting RCW 46.61.504). And, it found that substantial evidence[2] supported the district's court's conclusion—that Ostby was not safely off the roadway. Id. at 870-71.

The issue here is whether Jackson failed to prove that it was more likely than not that his vehicle was safely off the roadway. Jackson argues that the facts differ from those in Ostby, because his "vehicle was not blocking access, he was at least a car length removed from the public Pacific Highway, the engine had not been running for an hour, and his lights were not on."

---

[2] Ostby was decided before our Supreme Court decided the standard of review for challenges to the sufficiency of the evidence to support a conviction based on an affirmative defense in State v. Lively, 130 Wn.2d 1, 17, 921 P.2d 1035 (1996).

Deputy Lopez testified that Jackson's car was "blocking the driveway" and, more specifically, that it was "right in front of the gate area." Lopez also clarified, "I could have pulled around it. I think it was mostly blocking incoming traffic." And later, Lopez explained that Jackson's car was "off the main road and off the sidewalk" on the access way to the hotel entryway, with the front of the car facing International Boulevard. Jackson's car was far enough into the driveway that Lopez pulled his car into the driveway and parked in front of Jackson's, enabling Lopez's car to be completely off of International Boulevard. Deputy Patrick Kelly, who arrived on the scene after Deputy Lopez, testified that Jackson's car was parked blocking a driveway of the hotel, in such a way that it was "preventing vehicles from entering or leaving that area." Deputy Steven Johnson, who arrived with Lopez, testified that Jackson's car was "roughly in the middle" of the driveway. Johnson also described the hotel parking as where he "often at night will see people, motorists, who are tired pull over there."

In describing the location of the car, Jackson testified,

> Okay. And the hotel would be back here. There's a gate here for entry. . . . And then there's a fence going down this side. And this is Pacific Highway. So I would have been probably like right here towards the curb and the fence.

The record is unclear as to whether the car was running when Deputy Lopez asked Jackson to step out of it. Lopez testified that he did not remember hearing the car running, nor did he remember seeing the keys. This case is distinguishable from Ostby on that fact, because there the record was clear that the defendant was passed out behind the wheel with the motor running and the transmission in drive.

6

But, Jackson's testimony did not contradict the State's evidence that the car was parked in the driveway for incoming and outgoing traffic to the hotel parking lot. While in Beck the officer testified that the defendant's car was "off the roadway and there was no danger," here no deputy made a concession of that nature. 130 Wn. App. at 484. In fact, Jackson was parked in one of the two lanes of the driveway, or according to one of the deputies, in the middle of the lanes, meaning vehicles exiting the roadway to get to the parking entry gate would have to make their way around him by entering the exit lane. And, Jackson testified that he was on the south side of the driveway, toward the curb and the fence. Because his car was facing toward the highway, we can infer from the record that he was facing the wrong way in what would have been the ingress lane to the parking lot. Viewed in the light most favorable to the State, the evidence was sufficient for a jury to conclude that Jackson failed to prove that he was, more probably that not, safely off the roadway.

The evidence was sufficient for a jury to find that Jackson was in actual physical control of a vehicle while under the influence.

## II. To Convict Instruction

Jackson argues next that the to convict instruction for possession of a controlled substance relieved the State of its burden of proof, because it did not specify cocaine as the controlled substance.

### A. Essential Element

The State bears the burden of proving every element of the crime charged beyond a reasonable doubt. State v. Fisher, 165 Wn.2d 727, 753, 202 P.3d 937

7

(2009). It follows that the to convict instruction must contain every element of the crime charged. Id. Failure to include every element of the crime charged amounts to constitutional error that may be raised for the first time on appeal. Id. at 753-54. We review to convict instructions de novo. Id. at 754.

When a defendant is charged with possession of a controlled substance, the identity of the substance is an essential element that must be stated in the to convict instruction if it increases the maximum sentence. See State v. Gonzalez, 2 Wn. App. 2d 96, 106, 408 P.3d 743, review denied, 190 W.2d 1021, 418 P.3d 790 (2018). Because the various provisions of RCW 69.50.4013 "have the effect of imposing different maximum sentences based on the type and amount of the controlled substance possessed," the identity of the controlled substance is an essential element. Id. at 110.

Here, the identity of the substance that the State alleged Jackson possessed, cocaine, was an essential element because it exposed him to greater punishment. Possession of cocaine is a class C felony, while possession of forty grams or less of marijuana is only a misdemeanor. RCW 69.50.4013(1), (2); RCW 69.50.4014. The instruction provided,

> To convict the defendant of the crime of Possession of a Controlled Substance, as charged in count [two], each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about the [sic] February 29, 2016, the defendant possessed a controlled substance; and
>
> (2) That the acts occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty as to count [two].

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty as to count [two].

The State asserts that there was no error because the to convict instruction's use of "as charged" incorporated the information, which specified cocaine as the controlled substance. To support its assertion, the State cites State v. Sibert, 168 Wn.2d 306, 230 P.3d 142 (2010).

In Sibert, a plurality of our State Supreme Court affirmed a controlled substances delivery conviction despite the fact that the to convict instruction omitted reference to the specific substance. 168 Wn.2d at 312-13. The plurality held that the failure to specify methamphetamine in the to convict instruction was not error when (1) the to convict instruction incorporated the drug identity by reference to the charging document, which specified methamphetamine, and (2) that drug and only that drug was proved at trial. Id. at 309-10, 317. But, only four justices agreed to this part of the lead opinion, and the four dissenting justices agreed that the omission was error. Id. at 317 (lead opinion), 325-26 (Alexander, J., dissenting), 334 (Sanders, J., dissenting). The ninth justice concurred in the lead opinion's result only. Id. at 317. Because there is no majority opinion adopting any analysis on this issue, Sibert does not control whether the omission of the essential element of the identity of the controlled substance is error. See State v. Johnson, 173 Wn.2d 895, 904, 270 P.3d 591 (2012) ("A plurality has little precedential value and is not binding.").

9

In recent similar cases, this court has held that omitting the essential element of the identity of the controlled substance in the to convict instruction is error. Gonzalez, 2 Wn. App. 2d at 111; State v. Clark-El, 196 Wn. App. 614, 619-20, 384 P.3d 627 (2016) (recognizing that Sibert did not result in binding law on this issue and that omitting the identity of the controlled substance in the to convict instruction is error, especially where the to convict instruction did not include "as charged" language).

Under existing case law, omitting the essential element of the identity of the controlled substance from the to convict instruction is error.

B. Harmless Error Analysis

The State argues that, even if it was erroneous to omit a reference to cocaine in the to convict instruction, the error was harmless as to Jackson's conviction.

Under the federal constitution, an erroneous jury instruction that omits an element of the offense is subject to harmless error analysis. Neder v. United States, 527 U.S. 1, 4, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999); State v. Brown, 147 Wn.2d 330, 340-41, 58 P.3d 889 (2002) (following Neder). A jury instruction that omits an essential element is harmless if it appears beyond a reasonable doubt the error did not contribute to the verdict. Brown, 147 Wn.2d at 341. The omitted element must be supported by "uncontroverted evidence," and the reviewing court must be able to "'conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error.'" Id. (quoting Neder, 527 U.S. at 19).

Jackson argues that, under article I, sections 21 and 22 of the Washington Constitution, omitting an essential element from the to convict instruction requires automatic reversal. And, he further argues that this court should follow the lead of the New Hampshire and Mississippi courts and hold that harmless error does not apply in this context. Jackson's arguments are the same as those presented in Gonzalez and Clark-El. Gonzalez, 2 Wn. App. 2d at 112; Clark-El, 196 Wn. App. at 620-24. Jackson does not attempt to show why the analysis in either of those cases is incorrect. Consistent with the analyses in Gonzalez and Clark-El, we hold that the error in omitting the essential element of the identity of the controlled substance is subject to harmless error analysis as to the conviction.

Alternatively, Jackson asserts that the failure to require proof of the charged controlled substance was not harmless beyond a reasonable doubt. He argues that the State presented evidence of various substances at trial, and the jury "might have entertained a reasonable doubt as to the validity of the testing" of the substance found on Jackson or in his blood.

Although the record includes evidence that Jackson had both cocaine and diazepam in his blood, the fact that Jackson was in possession of cocaine was uncontroverted. At trial, the State presented the cocaine found on Jackson. Moreover, Jackson testified, "[T]here was cocaine in the car and the cocaine was in a baseball hat inside of the passenger side of the car." And, later Jackson testified, "I knew I had cocaine, yes, ma'am." In jury instruction 15, the trial court told the jury, in part, "Possession in Count 2 means having a substance in one's

custody or control." The to convict instruction also referred the jury to count two of the information, which clearly specified possession of cocaine.

Given these facts, the error in the to convict instruction was harmless beyond a reasonable doubt because the omitted element is supported by uncontroverted evidence, and this court is able to conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error. Accordingly, we affirm the unlawful possession of a controlled substance conviction.

III. Sentencing

Jackson argues third that even if this court affirms the conviction, this case must be remanded for resentencing. He contends that the jury's verdict, that he possessed an unidentified controlled substance, authorized the sentencing court to impose only the "lower possible sentence" for possession of controlled substance, which is a misdemeanor.

"'The constitutional right to jury trial requires that a sentence must be authorized by a jury's verdict.'" Clark-El, 196 Wn. App. at 624 (quoting State v. Morales, 196 Wn.2d 106, 109, 383 P.3d 539 (2016)). If a court imposes a sentence that is not authorized by the jury's verdict, harmless error analysis does not apply. Id.

The jury's finding that Jackson possessed an unidentified controlled substance authorized the sentencing court to impose only the lowest possible sentence for possession of a controlled substance. Gonzalez, 2 Wn. App. 2d at 114 (Holding that without a finding regarding the nature of the controlled

12

substance, the jury's verdict authorized the court to impose only the lowest possible sentence for unlawful possession of a controlled substance.). The trial court nevertheless imposed a felony sentence in this case.

The State concedes that resentencing is required.[3]

We affirm Jackson's convictions, but remand for resentencing on the conviction for unlawful possession of a controlled substance in order for the court to impose a misdemeanor sentence.

_Appelwick, C.J._

WE CONCUR:

_Andrus, J._                    _Dwyer, J._

---

[3] At oral argument, the State asked this court to distinguish sentencing in this case from Clark-El because here, Jackson admitted to possession of cocaine while testifying. But, Jackson never stipulated to cocaine possession nor entered a plea agreement acknowledging his cocaine possession. As in Clark-El and Gonzalez, the jury's verdict that Jackson possessed an unidentified controlled substance did not provide a basis upon which the trial court could impose a sentence based on possession of cocaine.