[Nos. 44247-3-I; 43741-1-I.   Division One.   February 18, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. SALATHIEL STOVALL, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. ROXANNE ELIZABETH ROBERTS, *Appellant*.

*Eric J. Nielsen* (of *Nielsen Broman & Koch, P.L.L.C.*), for appellant Stovall.

*David L. Donnan* and *Shannon B. Marsh* (of *Washington Appellate Project*), for appellant Roberts.

*Norm Maleng, Prosecuting Attorney*, and *Erin E. Ehlert* and *Andrea R. Vitalich, Deputies*, for respondent.

BAKER, J. — In these appeals we are called upon to determine under what circumstances an erroneous jury instruction that allowed the jury to convict a defendant of accomplice liability based on his participation in a crime other than the charged crime is harmless.[1] We conclude that, if evidence of an uncharged crime is before the jury and the State argues that the defendant's participation in such crime triggered liability for the specific crime charged, reversal is required.

Roxanne Roberts also argues that under the Washington Constitution, harmless error analysis cannot apply to jury

---

[1] Because both of these cases involve identical issues, we review them together in one opinion.

instructions which relieve the State of its burden to prove an element of the crime charged. Based upon our Supreme Court's recent decision in *State v. Brown*,[2] an independent state constitutional analysis is not required.

# I

*Salathiel Stovall*

During an undercover buy/bust operation in which Officer Darren Chinn posed as a prospective buyer, Chinn asked Salathiel Stovall if he knew anyone who would sell him a "forty," a slang term for $40 worth of rock cocaine. Stovall said he did not have any, but his friend Mark up the street had some.

Stovall directed Chinn to pull forward and park, while Stovall ran ahead on foot. Chinn testified that at this point, a second person, Irbey Sankey, suddenly appeared.

Sankey and Stovall spoke briefly, then Sankey approached Chinn and sold him $40 worth of cocaine. Stovall stood on the sidewalk about 15 feet away from Chinn's car during the transaction. Immediately after Sankey left, Stovall went to Chinn and asked if he could have a small piece of the cocaine Chinn had just purchased. Chinn refused, but gave Stovall a five dollar bill. Both Sankey and Stovall were arrested shortly thereafter.

Stovall testified that Sankey was unknown to him before the incident, and that Sankey had interrupted his attempt to have Chinn buy from his friend, Mark. Instead, when Sankey learned from Stovall that Chinn was interested in purchasing cocaine, he ran to the car and made the transaction with Chinn himself.

The State charged Stovall with delivering cocaine. Although Stovall admitted he had attempted to secure cocaine for Chinn, he steadfastly denied any involvement in the actual cocaine transaction between Sankey and Chinn. In closing, the prosecutor argued that Stovall was guilty as an

---

[2] 147 Wn.2d 330, 58 P.3d 889 (2002).

accomplice to the actual transaction, but also because Stovall had admitted that he tried to arrange a drug transaction between Chinn and Stovall's friend, Mark. The prosecutor argued that because Stovall was assisting in "a" crime, it did not matter that someone other than the intended seller actually sold the cocaine.

Stovall was convicted as an accomplice to delivery of a controlled substance, and now appeals.

*Roxanne Roberts*

Seattle police officer Todd Brothers was working under-cover as part of a buy/bust operation in downtown Seattle. He approached Carmen Creamer and asked her if she could get him some crack cocaine. Carmen agreed and told Brothers to follow her to the St. Regis Hotel, where she would procure the cocaine.

As the two were walking to the hotel, Roxanne Roberts approached Creamer and asked her for $20 to get a room for the night. The officer then asked Roberts if she could "set [him] up." Roberts allegedly agreed that she would help him find cocaine in return for $20, and all three continued walking to the hotel.

Roberts and Creamer instructed Brothers to wait outside while they entered the hotel. According to the State's witnesses, once inside the hotel, the two women split up to try to find cocaine. Roberts asked the desk clerk to call one of the rooms for her. When there was no answer, Roberts approached a man in the lobby and asked him if he could "set [her] up." The man told Roberts that he would not help her because she still owed him money from previous drug transactions. Roberts then left the lobby and waited outside with Brothers. Roberts reentered the hotel but again returned alone and empty handed. While waiting with Brothers, Roberts confirmed that she would receive $20 for her assistance if Brothers obtained cocaine.

Creamer emerged from the hotel, and gave Brothers two pieces of crack cocaine. Brothers then handed $50 to Creamer stating, "There's $30 for the dope and $20 for

[Roberts]." Creamer and Roberts walked away together and Creamer handed Roberts $20. The two were arrested soon thereafter. When the arresting officer told Roberts she was under arrest, Roberts exclaimed, "I didn't sell drugs to anybody." A search of Roberts' jacket yielded a crack pipe with cocaine residue.

Roberts was charged and convicted of the crime of delivery of a controlled substance. She appeals.

## II

In each trial, the court instructed the jury using the standard accomplice liability instruction, Washington Pattern Jury Instruction: Criminal 10.51 (WPIC).[3] Stovall and Roberts argue that this instruction relieved the State of its burden of proving every element of the crime of delivery of a controlled substance because it did not specify that an accomplice has to have knowledge that his or her acts will promote the specific crime charged. In *State v. Cronin*[4] and *State v. Roberts*,[5] the Supreme Court held that a defendant may not be convicted on the basis of accomplice liability unless the defendant had specific knowledge of the crime charged. In so holding, the court invalidated WPIC 10.51.[6]

---

[3] Washington Pattern Jury Instruction: Criminal 10.51 reads:

A person who is an accomplice in the commission of a crime is guilty of that crime whether present at the scene or not. A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of a crime, he or she either:

(1) solicits, commands, encourages, or requests another person to commit the crime; or

(2) aids or agrees to aid another person in planning or committing a crime.

11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.51, at 157 (2d ed. 1994) (WPIC).

[4] 142 Wn.2d 568, 14 P.3d 752 (2000).

[5] 142 Wn.2d 471, 14 P.3d 713 (2000).

[6] Under Washington's accomplice liability statute, RCW 9A.08.020, a defendant is liable as an accomplice if he knew that his actions would promote or facilitate the specific crime charged. WPIC 10.51 was invalidated because it required the jury to find only that the defendant knew his actions would promote or facilitate "a crime," rather than "the crime" charged. *Cronin*, 142 Wn.2d at 579.

The State concedes that the accomplice liability instruction contains the same language held to be defective in *Cronin*, but argues that giving the instruction in these cases was harmless error.[7] The State asserts that there was no evidence or argument that the defendants may have committed another, uncharged offense. Thus, the fact that the words "a crime" were used in the instructions did not affect the outcome of the trial because the jury was concerned only with whether the evidence was sufficient to convict the defendants for the crime that was charged.

■ ■ The Washington Supreme Court recently explained that an erroneous accomplice liability instruction may constitute harmless error in *State v. Brown*.[8] Under *Brown*, "[a]n erroneous instruction is harmless if, from the record in a given case, it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."[9] The court explained that where evidence shows that a defendant facing multiple charges acted as a principal in any of the crimes charged, the difference between "a crime" and "the crime" in the accomplice instruction is harmless with respect to those charges.[10] But if the evidence pertaining to one or more of the charges shows no direct participation by the defendant as a principal and the jury may have found the defendant guilty as an accomplice based on his involvement in some crime other than the

---

[7] The State also argues that Stovall and Roberts waived their right to appeal by failing to object to the court's accomplice liability instruction. Generally, we will not consider issues raised for the first time on appeal. However, a claim of error may be raised for the first time on appeal if it is a "manifest error affecting a constitutional right." RAP 2.5(a)(3). Where an instructional error may be construed as relieving the State of the burden of proving an element of its case, the error is manifest and of constitutional magnitude and may therefore be raised for the first time on appeal. *State v. Stein*, 144 Wn.2d 236, 241, 27 P.3d 184 (2001). We therefore review the instruction without considering whether Stovall and Roberts properly preserved the issue below. *State v. Mangan*, 109 Wn. App. 73, 76 n.1, 34 P.3d 254 (2001); *see also State v. Israel*, 113 Wn. App. 243, 265 n.2, 54 P.3d 1218 (2002).

[8] 147 Wn.2d 330, 58 P.3d 889 (2002).

[9] *Brown*, 147 Wn.2d at 332.

[10] *Brown*, 147 Wn.2d at 341-42.

specific crime charged, the erroneous accomplice liability instruction is not harmless error.[11]

This analysis applies equally to situations where the jury may have found the defendant guilty as an accomplice based upon his involvement in an uncharged crime. In *State v. Bui*,[12] consolidated with *Cronin*, Bui drove his car into the path of an opposing gang's car in order to block its path. Bui's passenger then exited the car and began shooting at the opposing gang members.[13] Bui was later arrested and charged with three counts of assault in the first degree as an accomplice.[14] The prosecutor argued in closing that it was not necessary that Bui knew that his passengers were going to open fire on another car's occupants. By chasing the opposing gang member's car and blocking its path, and letting his passengers get out, he knew that he was facilitating "harassment[,] physical assault[,] any crime."[15] The court concluded that under those circumstances the incorrect instruction on accomplice liability was not harmless error.[16] Thus, if evidence of an uncharged crime is before the jury and the State argues that the defendant's participation in "any" crime triggered liability for the specific crime charged, reversal is appropriate.

### Salathiel Stovall

Stovall did not act as a principal in delivering the cocaine from Sankey to Chinn. In closing argument, the prosecutor argued that Stovall was guilty as an accomplice because he facilitated the actual transaction that occurred. However, he also argued that Stovall was guilty as an accomplice even if he had not aided in the actual drug sale that occurred because Stovall admitted he attempted to arrange a drug transaction between Chinn and Mark. The prosecu-

---

[11] *Brown*, 147 Wn.2d at 341-42.

[12] 142 Wn.2d 568, 14 P.3d 752 (2000).

[13] *Cronin*, 142 Wn.2d at 571.

[14] *Cronin*, 142 Wn.2d at 571-72.

[15] *Cronin*, 142 Wn.2d at 573.

[16] *Cronin*, 142 Wn.2d at 580.

tor asserted that because Stovall was assisting in "a crime," namely attempting to facilitate a delivery between Chinn and Mark, it did not matter that it was Sankey, and not the intended Mark, who delivered the cocaine. Thus, the jury could have believed Stovall had nothing to do with the delivery between Chinn and Sankey, yet could have reasonably concluded under the erroneous instruction and the prosecutor's closing argument that Stovall's participation in the uncharged crime of attempted delivery between Chinn and Mark ("a crime") triggered his liability for the actual delivery of cocaine ("the crime"). The instruction was therefore not harmless.

We therefore reverse, and remand for a new trial with a proper accomplice instruction.

*Roxanne Roberts*

■ Roberts argues similarly that she did not participate in the crime charged, i.e., Creamer's delivery of cocaine. She also contends that the prosecutor's description of Roberts' drug paraphernalia focused the jury on other criminal endeavors. But unlike Stovall's trial, the prosecutor did not imply that the jury could convict Roberts of uncharged acts. In closing argument, the prosecutor argued that, "The question is whether or not the defendant is an accomplice in this case . . . . Did the defendant Roxanne Roberts aid Carmen Creamer in the commission of *this crime?*" Therefore, as this case was tried and argued, the jury was aware that accomplice liability had to be based on the specific crime charged.

With regard to evidence of Roberts' crack pipe, the record shows that the prosecutor mentioned it in order to rebut the defense argument that Roberts had no knowledge that a drug deal was taking place. The prosecutor did not suggest that Roberts was guilty of "a" crime by possessing the crack pipe. The jury was not confronted by evidence or argument of any crime other than the specific charged crime on which to base accomplice liability. The erroneous instruction is harmless.

■ Roberts next argues that under the Washington Constitution, harmless error analysis cannot apply to jury instructions which relieve the State of its burden to prove every element of the crime charged. We disagree. Our decisions regarding whether harmless error analysis applies to instructional errors are guided by the United States Supreme Court.[17] In *Neder v. United States*,[18] relied upon by *State v. Brown*, the Court held that an erroneous jury instruction that omits an element of the offense is subject to harmless error analysis.[19] The *Brown* court stated that, "We find no compelling reason why this Court should not follow" that holding.[20] The dissent in *Brown* is also instructive in this regard. In his dissent, Justice Sanders argued that, "our majority departs from binding Washington precedent which precludes harmless error analysis where, as here, the jury may have reached its verdict on an erroneous theory of liability."[21] This language suggests that the state constitutional issue was at least considered by the *Brown* court. Accordingly, we see no basis to undertake an independent state constitutional analysis.[22]

■■ Roberts also argues pro se that she was denied her Sixth Amendment right to the effective assistance of counsel. Competency of counsel is judged in review of the entire record.[23] To establish ineffective assistance of counsel, the claimant must show deficient performance and resulting prejudice.[24] Performance of counsel is deficient when it falls "below an objective standard of reasonableness" under

---

[17] *State v. Johnson*, 100 Wn.2d 607, 621, 674 P.2d 145 (1983), *reversed on other grounds by State v. Bergeron*, 105 Wn.2d 1, 711 P.2d 1000 (1985) ("Absent a clear direction from the Supreme Court, we will continue to assume, as we have in the past, that harmless error analysis does apply.").

[18] 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999).

[19] *Neder*, 527 U.S. at 9.

[20] *Brown*, 147 Wn.2d at 340.

[21] *Brown*, 147 Wn.2d at 349-50.

[22] *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984).

[23] *State v. White*, 81 Wn.2d 223, 225, 500 P.2d 1242 (1972).

[24] *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996).

prevailing professional norms.[25] The defendant must show the absence of legitimate strategic or tactical rationales for the challenged attorney conduct.[26] Failure of trial strategy or tactics is not a sufficient basis to find ineffective assistance of counsel.[27] We engage a strong presumption that counsel's representation was effective.[28]

■ Roberts contends that defense counsel was deficient for failing to interview or subpoena "influential witnesses" or other character witnesses who would have testified as to her accomplishments. But there is nothing in the record to show who these potential witnesses were or what testimony they would have provided. Without a record of what testimony was omitted, Roberts fails to demonstrate prejudice.[29]

Roberts also contends that her attorney's decision to admit to Robert's ownership of a crack pipe was an illegitimate tactic. Roberts directed her attorney to admit to ownership of numerous pipes because they were, "proof that I collected them." We cannot say that counsel's decision to not admit to ownership of several crack pipes fell below an objective standard of reasonableness.

Stovall's conviction for delivery of a controlled substance is reversed and remanded for a new trial. We affirm Robert's conviction for delivery of a controlled substance.

Affirmed.

Cox, A.C.J., and KENNEDY, J., concur.

Reconsideration denied April 15, 2003.

---

[25] *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 888, 828 P.2d 1086 (1992) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

[26] *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995).

[27] *State v. Renfro*, 96 Wn.2d 902, 909, 639 P.2d 737 (1982).

[28] *State v. Brett*, 126 Wn.2d 136, 198, 892 P.2d 29 (1995) (citing *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987)).

[29] *McFarland*, 127 Wn.2d at 337 (prejudice must be established by record developed in trial court).