[No. 48475-3-I.  Division One.  July 28, 2003.]

*In the Matter of the Personal Restraint of* MOSI SIMS, *Petitioner.*

*Jason B. Saunders* (of *Washington Appellate Project*), for appellant.

*Norm Maleng, Prosecuting Attorney for King County*, and *Lee D. Yates, Deputy*, for respondent.

COLEMAN, J. — Mosi Sims and his twin brother Umi got into a fistfight with Vendell Henderson. The fight broke up and the brothers were walking back to their car when Henderson threatened the Sims' family. Umi went back to the car, got a gun, and fired two shots at Henderson, killing him. A jury convicted Umi of felony murder. They convicted Mosi of first degree manslaughter. The jury received an accomplice liability instruction stating that Mosi was an accomplice to the shooting if he knowingly facilitated "a crime." That instruction was later held to be erroneous in *State v. Cronin*, 142 Wn.2d 568, 579, 14 P.3d 752 (2000) and *State v. Roberts*, 142 Wn.2d 471, 513, 14 P.3d 713 (2000). This court stayed consideration of Mosi's personal restraint petition pending the Supreme Court's determination of whether such an error is subject to harmless error analysis. *See State v. Brown*, 147 Wn.2d 330, 58 P.3d 889 (2002).

Now that the Supreme Court has answered that question in the affirmative, we must determine whether Mosi has met his burden of demonstrating that the erroneous instruction prejudiced him. He has. Under the particular circumstances of this case, there is a substantial likelihood that the jury convicted Mosi because of his involvement in the fistfight rather than finding that he encouraged or facilitated the shooting. We therefore grant Mosi's personal restraint petition (PRP) and order a new trial with correct accomplice liability instructions.

## FACTS

Mosi Sims and his twin brother Umi were tried together for the murder of Vendell Henderson. According to the evidence at trial, on the day of the shooting Mosi went to the bank to cash a check. Mosi's girl friend and her brother accompanied him. Outside the bank, they encountered Henderson. Mosi wanted to fight Henderson over a past dispute. According to the victim's cousin, Fred Henderson, the twins had previously told him they were mad at Vendell for "jacking" them out of a drug deal and that they were

going to have to "take care" of him. Fred testified that he interpreted that statement as a threat to either beat Vendell up or kill him. Fred could not recall which of the twins made the statement.

Although Mosi wanted to fight immediately, Henderson was with a friend so Mosi's girl friend drove them to the house where Mosi's brother Umi lived. Umi was outside when they arrived, and Mosi told Umi that he had seen Henderson. Umi went into the house, put on his coat, grabbed his gun, and concealed it under his coat. He returned to the car and got into the back seat directly behind Mosi. The group drove back toward the bank to confront Henderson. On the way there, Umi placed the gun under the baby seat that was beside him. He testified that he did not let anyone else in the car see that he had the gun, and Mosi testified that he was unaware that Umi brought a gun to the fight.

In her original statement to the police, Mosi's girl friend said she had seen the gun when Umi got into the car and that he had put it under the front seat. At trial, however, she said she could not actually remember seeing the gun until later. She said that when questioned by police, she had assumed Umi had the gun when he got into the car and that he hid it under the front seat.

The group returned to the area where they had seen Henderson, and Mosi and Umi got out of the car and engaged Henderson in a fistfight. The fight eventually broke up without anyone sustaining serious injury. As Mosi and Umi were walking back to the car, all three continued to hurl insults and threats at each other.

The testimony varied as to what was said and by whom. One of the twins said, "That's what you get for jacking me." Henderson called the twins a variety of names and threatened to kill their parents and sister. According to Henderson's companion, Mosi told Henderson "I'll bust you with

a Mack-11 [sic] right now."[1] No one else testified to hearing that statement, however, and Mosi denied saying it. One bystander said he heard Umi ask Henderson, "Do you want a .38 to your head?" Several other witnesses testified that Umi, not Mosi, was the only one who threatened to shoot Henderson.

All the witnesses did agree, however, that it was Umi who went back to the car, retrieved his gun from behind the baby seat, and fired two shots at Henderson. Umi testified that he shot at Henderson only to "send him a message." The second bullet struck Henderson as he was running away, killing him. The gun Umi used to shoot Henderson was a .357-caliber pistol; no MAC-11 or .38 was used in the shooting. But police did find a MAC-11 at Umi's residence during a later search.

The State charged both brothers with first degree murder and, in the alternative, second degree felony murder. At the close of the State's evidence, the trial court dismissed the first degree murder charge against Mosi. At Mosi's request, the court also instructed the jury on the lesser offense of first degree manslaughter.[2] The jury convicted Umi of second degree felony murder,[3] and convicted Mosi of first degree manslaughter.

---

[1] A MAC-11 is a .9 mm submachine gun. The acronym stands for "Military Armament Corp.," one of the weapon's manufacturers. *See* http://www.cobray.com/history.htm (last visited June 27, 2003).

[2] In Mosi's direct appeal, this court noted that first degree manslaughter is not technically a lesser included offense of felony murder. *See State v. Sims*, noted at 98 Wn. App. 1018, 1999 Wash. App. LEXIS 2017, 1999 WL 1084272, at *12 (citing *State v. Berlin*, 133 Wn.2d 541, 550, 947 P.2d 700 (1997)). We sustained the conviction, however, because Mosi's attorney's request for the instruction could be viewed as a valid strategy, and it was the jury's prerogative to convict Mosi of the lesser offense even though they technically should have found Mosi guilty as an accomplice to felony murder, or not at all. *See Sims*, 1999 WL 1084272, at *11 n.2, *12. This opinion, therefore, should not be construed as suggesting that first degree manslaughter is a lesser included offense of felony murder.

[3] The Supreme Court recently held that assault cannot be the predicate felony supporting a conviction for felony murder. *See In re Pers. Restraint of Andress*, 147 Wn.2d 602, 56 P.3d 981 (2003). But the effect of *Andress* on this case is not at issue in this petition.

On direct appeal, Mosi argued that the evidence was insufficient to convict him as an accomplice to the murder. This court noted that the evidence implicating Mosi as an accomplice was "slender," but held that the evidence was sufficient when viewed in the light most favorable to the State. *State v. Sims*, noted at 98 Wn. App. 1018, 1999 Wash. App. LEXIS 2017, 1999 WL 1084272, at *11. After that decision, the Supreme Court decided *Cronin* and *Roberts*, which held that the same accomplice liability instruction used in Mosi's trial is an erroneous statement of the law because it allows the jury to convict a defendant as an accomplice for knowingly facilitating "a crime" instead of "the crime" charged. Mosi subsequently filed this PRP.

## STANDARD OF REVIEW

■ The parties analyze this case under different standards, so we take this opportunity to clarify that when a PRP petitioner seeks relief based on the accomplice liability instruction held erroneous in *Cronin* and *Roberts*, the petitioner, not the State, bears the burden of demonstrating prejudice. *In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 473, 965 P.2d 593 (1998), *rev'd on other grounds*, 313 F.3d 1160 (9th Cir. 2002), *cert. denied*, 539 U.S. 916 (2003); *In re Pers. Restraint of Hagler*, 97 Wn.2d 818, 825-26, 650 P.2d 1103 (1982). In *Brown*, a direct appeal, the Supreme Court held that a *Cronin/Roberts* error could be harmless only if the reviewing court concludes " 'beyond a reasonable doubt that the jury verdict would have been the same absent the error.' " *Brown*, 147 Wn.2d at 341 (quoting *Neder v. United States*, 527 U.S. 1, 19, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)).[4] But in a PRP, the burden shifts to the defendant to show prejudice:

On direct appeal, the burden is on the State to establish beyond

---

[4] Mosi urges us to reconsider *Brown* under the Washington Constitution. But, as we recently clarified in *State v. Stovall*, 115 Wn. App. 650, 659, 63 P.3d 192 (2003), the Washington Supreme Court disposed of both state and federal constitutional arguments in *Brown*. We therefore decline to reexamine *Brown* under the Washington Constitution. *See Stovall*, 115 Wn. App. at 659.

reasonable doubt that any error of constitutional dimensions is harmless. On collateral review, we shift the burden to the petitioner to establish that the error was not harmless; in other words, to establish that the error was prejudicial. Whereas the State's burden on direct appeal is beyond reasonable doubt, the petitioner's burden on collateral review should be beyond the balance of probabilities. Thus, in order to prevail in a collateral attack, a petitioner must show that more likely than not he was prejudiced by the error.

*Hagler*, 97 Wn.2d at 825-26 (citation omitted). Washington courts have consistently applied this standard even where, as here, a subsequent change in the law has held a particular jury instruction to be unconstitutional and the error impacts the trial's truth-finding function. *In re Pers. Restraint of Haverty*, 101 Wn.2d 498, 503-04, 681 P.2d 835 (1984). We have also applied this standard in previous PRPs based on the holdings of *Cronin* and *Roberts. See In re Pers. Restraint of Smith*, 117 Wn. App. 846, 860, 73 P.3d 386 (2003); *In re Pers. Restraint of Howerton*, 109 Wn. App. 494, 502, 36 P.3d 565 (2001); *In re Pers. Restraint of Sarausad*, 109 Wn. App. 824, 39 P.3d 308 (2001).

To show prejudice, however, a defendant does not necessarily have to prove that he would have been acquitted but for the error. Rather, as courts have noted in other contexts, a defendant is prejudiced by a trial error if there is a "reasonable probability" that the error affected the trial's outcome and the error undermines the court's confidence in the trial's fairness. *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995) (collateral review of undisclosed evidence) (citing *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (ineffective assistance of counsel). Thus, although the barrier to relief is greater than on direct appeal, we will still reverse if we have a " 'grave doubt as to the harmlessness of an error.' " *Smith*, 117 Wn. App. at 860 (quoting *California v. Roy*, 519 U.S. 2, 5, 117 S. Ct. 337, 136 L. Ed. 2d 266 (1996)).

We therefore review this PRP to determine whether Mosi has met his burden of demonstrating that the erroneous accomplice instruction prejudiced him.

## ANALYSIS

■■ While we recognize that Mosi bears the burden of demonstrating prejudice, we conclude that he has met that burden under the facts of this case. The evidence of Mosi's collusion in the shooting was minimal, while his involvement in the fistfight was undisputed. There is, therefore, a reasonable probability that the jury relied on the erroneous accomplice liability instruction and convicted Mosi based on his admitted involvement in the fistfight rather than finding he encouraged or facilitated the shooting.

As the State concedes, the accomplice liability instruction used in this case was erroneous. To convict a defendant as an accomplice to murder, the State must prove beyond a reasonable doubt that the defendant had general knowledge that he or she was aiding in the commission of a homicide. *Cronin*, 142 Wn.2d at 581; *Sarausad*, 109 Wn. App. at 836. The accomplice liability instruction in this case was flawed because it allowed the jury to convict Mosi of felony murder or the lesser first degree manslaughter charge if the jury merely found that Mosi knew his conduct promoted the commission of "a crime." *Cronin*, 142 Wn.2d at 579.

In determining whether this error in the standard accomplice instruction prejudiced a defendant, we consider whether the jury was confronted with evidence of uncharged crimes and whether the State used the erroneous portion of the instruction in closing arguments to encourage the jury to convict the defendant based on those uncharged crimes. *State v. Stovall*, 115 Wn. App. 650, 657, 63 P.3d 192 (2003). If both occurred, reversal is appropriate. *Stovall*, 115 Wn. App. at 657. If the jury is not "confronted by evidence or argument of any crime other than the specific charged crime on which to base accomplice liability," the

error may be harmless beyond a reasonable doubt. *Stovall*, 115 Wn. App. at 658. The same factors are relevant in determining whether a PRP petitioner raising a *Cronin/ Roberts* violation has demonstrated prejudice.

The State argues that Mosi cannot show prejudice because the prosecutor never encouraged the jury to convict him of murder based on his involvement in the fistfight. It is true that the State's focus in closing arguments is a key consideration in determining whether an erroneous accomplice liability instruction prejudiced a defendant. *See Stovall*, 115 Wn. App. at 658. But it is not the only consideration. Rather, we consider the State's closing argument in conjunction with the evidence that was before the jury in order to determine how likely it is, in a particular case, that the erroneous instruction prejudiced the defendant.

In this case, even though the State never urged the jury to convict Mosi based on his involvement in the fistfight, the facts presented give rise to a high likelihood that the jury did so. There is no evidence, and the State has never argued, that Mosi was guilty as a principal. Instead, the State argued that Mosi was an accomplice because he knew his brother had a gun and he encouraged him to shoot Henderson. That argument was based almost entirely on one witness's allegation that Mosi told Henderson "I'll bust you with a Mack-11 [sic] right now." *Sims*, 1999 WL 1084272, at *11. But Umi shot Henderson with a .357 handgun, not a MAC-11. Further, on its face, that statement was not one of encouragement directed at Umi, but a personal threat directed at Henderson. In order for the jury to accept the State's accomplice theory, they would have to conclude that when Mosi said, "I'll bust you with a Mack-11" he meant, "Umi, you bust him with a .357." Thus, although the evidence was sufficient to convict Mosi when viewed in the light most favorable to the State,[5] we cannot

---

[5] This court rejected Mosi's sufficiency challenge on direct appeal. *Sims*, 1999 WL 1084272, at *11. Our inquiry here is different, however. Now we must consider the evidence, not to examine its sufficiency in the light most favorable to the State,

say with any degree of confidence that the jury relied on the State's theory rather than the erroneous accomplice instruction.

Given the meager amount of evidence indicating that Mosi encouraged or facilitated the shooting, the jury could have simply decided that Mosi was liable for Umi's actions because he solicited Umi's participation in the initial confrontation that led to the shooting. The erroneous instruction allowed them to reach that conclusion by stating that Mosi was an accomplice if he knowingly encouraged or solicited another to commit "a crime." Accordingly, Mosi has demonstrated an error that undermines our confidence in the verdict and leaves us " 'in grave doubt as to the harmlessness of [the] error.' " *Smith*, 117 Wn. App. at 860 (quoting *Roy*, 519 U.S. at 5). Under these particular circumstances, therefore, Mosi has met his burden of demonstrating that the instruction prejudiced him.[6]

We grant the petition and order a new trial with accurate instructions.

ELLINGTON and SCHINDLER, JJ., concur.

---

but to assess how likely it is that the jury relied on the erroneous accomplice instruction in reaching its verdict.

[6] We reach this conclusion without reference to the juror statement proffered by Mosi. The statement involves the jury's thought processes and therefore inheres in the verdict. *State v. Hatley*, 41 Wn. App. 789, 794, 706 P.2d 1083 (1985). Accordingly, we have not considered the juror declaration as evidence of prejudice.