FILED
COURT OF APPEALS
DIVISION II

2013 JUL -9 AM 9:09

STATE OF WASHINGTON

BY_____
        DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Personal Restraint Petition of | No. 42863-6-II |
| DYNAMITE SALAVEA, | |
| Petitioner. | UNPUBLISHED OPINION |

BJORGEN, J. — In this personal restraint petition (PRP), Dynamite Salavea argues that deficient jury instructions for his trial on charges of child rape and child molestation violated his double jeopardy protections and that we should vacate several of his convictions. For the reasons below, we deny Salavea's request for relief.

## FACTS

### I. CHARGES AND TRIAL TESTIMONY

In October 2000, the State charged Salavea with four counts of first degree child rape[1] and two counts of first degree child molestation,[2] all occurring between February 1996 and June 1998. Two of the child rape charges and one of the child molestation charges were for crimes

---

[1] RCW 9A.44.073.

[2] RCW 9A.44.083.

against R.U.T., who was between five and seven years old at the time.[3] The other two counts of child rape and one count of child molestation were for crimes against R.K.T., who was between the ages of six and eight at the time.

Salavea is the cousin of R.U.T. and R.K.T. At trial, R.U.T.'s and R.K.T.'s mother, B.T., testified that she used to take the two to their grandmother's house four or five times a week while she was at work. She testified that the boys frequently stayed overnight.

R.U.T. testified that he usually slept in a big bed in the basement when at his grandmother's, sometimes with as many as four or five relatives. At times Salavea slept in the basement bed with R.U.T. and R.K.T. R.U.T. testified that Salavea would "stick his front private in my back private" and that it happened more than once. Report of Proceedings (RP) at 375-76.

R.U.T. stated that he tried to stop Salavea, but "[m]ost of the time" Salavea did it anyway. RP at 376. R.U.T. also testified that sometimes he would yell when this happened, but that it was hard to yell because he was lying on his stomach with his face in a pillow. "Sometimes" when R.U.T. would try to stop Salavea, Salavea would hit him, and "other times" R.U.T. did not resist because he "just . . . [felt] scared." RP at 377-78. Salavea would force anal intercourse on R.U.T. for "different time limits." RP at 378.

In addition to describing the nighttime basement rapes, R.U.T. described daytime sexual assaults when his "auntie" went to the store. RP at 379. R.U.T. testified that at these times, Salavea would "do the same things" to him but in different rooms; "a couple times" the sexual assaults took place in his auntie's bedroom. RP at 383, 379. Once, when R.U.T. did not go to church with his grandmother, Salavea raped R.U.T. in the living room. On this occasion, after

---

[3] We use initials to protect the privacy interests of sex crime victims.

Salavea forced anal penetration, Salavea made R.U.T. "suck his front private." RP at 380, 383. R.U.T. also testified that twice or three times when he was outside, Salavea pushed him into his grandmother's shed and anally and orally raped him.

R.K.T. testified that he used to visit his grandmother's house almost every week and that he would sleep in the basement. Salavea would put his hand down R.K.T.'s pants and rub R.K.T.'s private parts. R.K.T. testified that he would start crying and tell Salavea to stop, but Salavea would not. R.K.T. also stated that Salavea put his "privates" on R.K.T.'s behind and rubbed it up and down. RP at 409-10. R.K.T. testified that this happened "[m]any times" and that "he was behind me every time I went over there." RP at 411, 415. Leah Hill, a friend of B.T., testified that when R.K.T. was eight, he told her that Salavea had "put his thing in my butt." RP at 357-58.

Nurse practitioner Cheryl Hanna-Truscott testified that she evaluated R.U.T. and R.K.T. when they were seven-and-a-half and eight-and-a-half years old, respectively. R.U.T. told her (1) that Salavea put his "private in my butt" and he put it "all the way and made it bleed," (2) that Salavea did other "nasty" things, such as touching R.U.T.'s private with his hands and then touching his own until "gray stuff" came out of Salavea's private part, and (3) that he tried to get away, but Salavea would hit him and demand that he "hold still." RP at 330-31, 337. R.K.T. also told Truscott that Salavea (1) pulled R.K.T.'s pants down and put his mouth on R.K.T.'s private, telling R.K.T. that he will try to bite it, and (2) forced him to put his mouth on Salavea's private.

3

R.K.T. told child interviewer Jennifer Knight about a number of the sexual assaults recounted above. Speaking of the incidents generally, R.K.T. said that they started when he was about to go into the first grade and ended when he was in the second grade.

## II. JURY INSTRUCTIONS AND CLOSING ARGUMENT

Jury instruction 4 stated:

> A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count.

Clerk's Papers (CP) at 68.

Instruction 8 defined "sexual intercourse" in the following terms:

> Sexual intercourse means any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another whether such persons are of the same or opposite sex.

CP at 72.

Instruction 10, in turn, defined "sexual contact" as:

> any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desires of either party or a third party.

CP at 74.

The jury instructions also included a separate "to convict" instruction for each of the six counts. Instructions 11 through 14 all pertained to first degree child rape; instructions 11 and 12 named R.K.T., and instructions 13 and 14 named R.U.T. Otherwise, instructions 11 through 14 were nearly identical and covered the same time period, from February 1996 through June 1998. Instructions 15 and 16 covered child molestation, one pertaining to R.U.T and one to R.K.T. Instructions 15 and 16 were nearly identical and also covered the same time period, from

4

February 1996 through June 1998. The instructions did not direct the jury to base a verdict for each count on separate and distinct criminal acts.

During closing argument, the State delineated the elements of first degree child molestation and the elements of first degree child rape. The State recounted the testimony, quoting R.U.T. and R.K.T. extensively, arguing that the details provided by them were too "descript [sic]" to be fabricated. RP at 637. The State argued that Salavea committed rape: (1) by putting his mouth on R.U.T.'s and R.K.T.'s penises and also (2) by putting his penis in R.U.T.'s and R.K.T.'s anuses. The State argued that Salavea committed child molestation by touching R.U.T.'s and R.K.T.'s penises with his hands, rubbing his penis against their behinds, and rubbing his penis against their penises.

The jury found Salavea guilty of four counts of first degree child rape and two counts of first degree child molestation. In his direct appeal Salavea argued that (1) prosecutorial delay denied him due process and the benefits of the juvenile court jurisdiction and (2) the trial court improperly admitted child hearsay. We rejected both claims and affirmed. *State v. Salavea*, 115 Wn. App. 52, 54, 60 P.3d 1230 (2003). Our Supreme Court granted review on the single issue of prosecutorial delay and affirmed. *State v. Salavea*, 151 Wn.2d 133, 86 P.3d 125 (2004). Salavea now petitions for relief in a PRP.

ANALYSIS

In his PRP Salavea argues that (1) his two sets of convictions for child rape violate double jeopardy protections because the jury instructions did not require the jury to base its convictions on separate and distinct incidents; and (2) his convictions for child molestation

5

violate double jeopardy protections because, as defined in the jury instructions, they are lesser included offenses of his child rape convictions.

## I. SEPARATE AND DISTINCT ACTS

Salavea argues that the trial court failed to instruct the jury that in order to convict him of multiple counts of first degree child rape, the verdict on each count must be based on proof of separate and distinct acts. The State concedes that the jury instructions lacked this language. However, under the applicable standards this omission does not raise any reversible error under the circumstances presented.

### A.    Standard of Review

To prevail on a PRP, Salavea must establish by a preponderance of the evidence that there was a constitutional error that resulted in actual and substantial prejudice or that there was a nonconstitutional error that resulted in a fundamental defect, which inherently results "in a complete miscarriage of justice." *In re Pers. Restraint of Woods*, 154 Wn.2d 400, 409, 114 P.3d 607 (2005); *In re Pers. Restraint of Borrero*, 161 Wn.2d 532, 536, 167 P.3d 1106 (2007). This requirement is "necessary to preserve the societal interest in finality, economy, and integrity of the trial process. It also recognizes that the petitioner has had an opportunity to obtain judicial review by appeal." *Woods*, 154 Wn.2d at 409. Salavea argues the first of these two types of error.

Actual prejudice "must be determined in light of the totality of circumstances." *In re Pers. Restraint of Music*, 104 Wn.2d 189, 191, 704 P.2d 144 (1985). In doing so, we will consider the jury instructions, the arguments of counsel, the weight of evidence of guilt, and

other relevant factors in evaluating whether a particular instruction caused actual prejudice. *Music*, 104 Wn.2d at 191.

The ultimate question in determining whether actual prejudice exists is whether the error "so infected the petitioner's entire trial that the resulting conviction violates due process." *Music*, 104 Wn.2d at 191. An error warrants relief when the reviewing court has "'a grave doubt as to the harmlessness of an error.'" *In re Pers. Restraint of Sims*, 118 Wn. App. 471, 477, 73 P.3d 398 (2003) (quoting *In re Pers. Restraint of Smith*, 117 Wn. App. 846, 860, 73 P.3d 386 (2003), *overruled on other grounds by In re Domingo*, 155 Wn.2d 356, 119 P.3d 816 (2005)). A per se prejudice rule is appropriate where it is certain that the defendant suffered multiple punishments for the same act and there is no possibility that the jury used different actions as the basis for the conviction. *In re Pers. Restraint of Francis*, 170 Wn.2d 517, 524-25, 242 P.3d 866 (2010).

B.   Constitutional Error

The state and federal constitutional guaranties against double jeopardy protect a defendant against "multiple punishments for the same offense." *State v. Mutch*, 171 Wn.2d 646, 661, 254 P.3d 803 (2011). To avoid this error in cases where multiple identical counts are alleged to have occurred within the same charging period, the trial court must explicitly instruct the jury that it is to find "separate and distinct acts" for convictions on each count or must otherwise make "the need for a finding of 'separate and distinct acts' manifestly apparent to the average juror." *State v. Borsheim*, 140 Wn. App. 357, 368, 165 P.3d 417 (2007). In the absence of such an instruction, it is possible for a unanimous jury to find that the State has proved only one act beyond a reasonable doubt and yet base multiple convictions on proof of that single act.

7

*State v. Berg*, 147 Wn. App. 923, 935, 198 P.3d 529 (2008), *overruled by Mutch*, 171 Wn.2d at 663-64.

In applying these rules, however, the court in *Mutch*, 171 Wn.2d at 663-64, expressly modified the approach of *Berg*, 147 Wn. App. at 931, and *State v. Carter*, 156 Wn. App. 561, 234 P.3d 275 (2010), *overruled by Mutch*, 171 Wn.2d at 663-64. *Berg* and *Carter* held that where the instructions were unclear about the need to find that each count arose from a separate and distinct act, the resulting ambiguity *potentially* exposed the defendant to multiple punishments for a single offense in violation of the double jeopardy clauses. *Mutch*, 171 Wn.2d at 662. *Mutch* refined *Berg* and *Carter* in two respects. First, it held that not just the instructions, but the evidence, the argument, and the entire trial record may be considered in treating these issues. *Mutch*, 171 Wn.2d at 664. Second, our Supreme Court held that the *potential* alone for multiple punishments for the same offense does not violate the double jeopardy clauses. Rather, there must *be* multiple punishments for the same offense. *Mutch*, 171 Wn.2d at 663-64.

Under *Mutch*, there is a double jeopardy violation if, considering the evidence, arguments and instructions,

> it is not clear that it was '*manifestly apparent* to the jury that the State [was] not seeking to impose multiple punishments for the same offense' and that each count was based on a separate act.

*Mutch*, 171 Wn.2d at 664 (quoting *Berg*, 147 Wn. App. at 931). If the reviewing court concludes that an actual, rather than possible double jeopardy violation exists under this rule, the proper remedy is to vacate the redundant convictions. *Mutch*, 171 Wn.2d at 664.

Considering the entire record in this case, no double jeopardy violations occurred under the rule in *Mutch*. Turning to the first degree child rapes of R.U.T., as charged in counts 3 and 4, R.U.T. testified directly to repeated acts of anal and oral intercourse when he was between the ages of five and eight, occurring in at least four different locations at his grandmother's house: (1) the basement; (2) the upstairs living room; (3) his aunt's bedroom; and (4) the shed. Thus, in addition to testimony that rapes occurred many times, the evidence before the jury described distinct acts of sexual intercourse. Each act of intercourse is sufficient to support a single count of rape.

Regarding the first degree child rapes of R.K.T., as charged in counts 1 and 2, R.K.T. disclosed at least two clear acts of oral/genital intercourse. One disclosure specified that Salavea put his mouth on R.K.T.'s penis; another disclosure specified that Salavea put his penis in R.K.T.'s mouth. Further, R.K.T. disclosed that Salavea anally raped him and that Salavea forced him to put his penis in Salavea's anus. In addition to testimony that rape occurred many times, the evidence before the jury described several distinct acts of sexual intercourse. Each act of intercourse is sufficient to support a single count of rape.

This evidence, together with the jury instructions and closing argument, made it manifestly apparent to the jury that the State was not seeking to impose multiple punishments for the same offense and that each count was based on a separate act. Under *Mutch* this does not create double jeopardy. Further, the acts of rape found in *Mutch* were no more separate or distinct than those found here. If those circumstances did not offend the double jeopardy clauses in the absence of a "separate and distinct act" instruction, the circumstances presented here also would not.

9

Under governing case law, the jury instructions did not put Salavea in double jeopardy by punishing him multiple times for the same act. Because no error occurred, Salavea has not met the first requirement for granting a PRP.

C.    Actual and Substantial Prejudice

Even if Salavea had shown the alleged error, he failed to show actual and substantial prejudice, the second requirement for a PRP. To demonstrate actual prejudice, Salavea must show by a preponderance of the evidence that had the jury received an instruction requiring it to find separate and distinct acts, it would have reached a different decision. *Borrero*, 161 Wn.2d at 536. However, Salavea does not present any reason why such an instruction would have made any difference when, as shown above, the jury had evidence before it of multiple acts constituting each rape count. With that, Salavea does not show that the verdicts would have differed had there been an instruction stating that the jury must base each conviction on a separate and distinct act.

II. LESSER INCLUDED OFFENSES

Salavea argues next that under the jury instructions his convictions for child molestation violate double jeopardy protections because they are lesser included offenses to his convictions for child rape. For this reason, he asserts that the molestation convictions must be vacated. We disagree, because even if these instructions made molestation a lesser included offense of child rape, it is clear from the evidence and the arguments that the convictions for rape and molestation were based on separate acts.

Our Supreme Court in *State v. French*, 157 Wn.2d 593, 141 P.3d 54 (2006), held that first degree child molestation is not a lesser included offense of first degree child rape. The court

based this ruling on two conclusions: first, that sexual contact, an element of child molestation, continues to require a showing of purpose or intent, while child rape does not; and, second, that child rape also requires a finding of penetration, while child molestation does not. *French*, 157 Wn.2d at 611. Thus, the court held that the two crimes are separate and can be charged and punished separately. *French*, 157 Wn.2d at 611.

Salavea argues that the holding in *French* does not follow from the specific jury instructions given at his trial. He points out that instruction 8 defined "intercourse," an element of child rape, as sexual contact involving the sex organs of one person and the mouth or anus of another. He further points out that instruction 10 defined "sexual contact" as any touching of the sexual or intimate parts done for the purpose of gratifying sexual desires. Therefore, he argues, child molestation did not have an element that child rape lacked.

Salavea is correct under the instructions given. The court in *French* ruled that molestation was not a lesser included offense, among other reasons, because it lacked the element of penetration found in child rape. *French*, 157 Wn.2d at 611. In doing so, it applied the rule from *State v. Freeman*, 153 Wn.2d 765, 772, 108 P.3d 753 (2005) (citing *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)), that

> [t]he test for whether two offenses may be separately charged and punished is whether each crime contains an element that the other does not and whether the evidence necessary to support a conviction for one crime would have been sufficient to warrant a conviction for the other.

*French*, 157 Wn.2d at 610.

Here, the instructions defined "intercourse" as "certain sexual contact," omitting the element of penetration from child rape. Jury instructions to which no objections are made become the law of the case. *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.3d 900 (1998). Under

11

these instructions, all the elements of child molestation are also elements of child rape, and evidence necessary to support a conviction of child rape would have warranted a conviction for molestation. Under the test in *French* and these instructions, Salavea cannot be convicted of molestation for the same act for which he was convicted of rape. Salavea was convicted of first degree child rape. Therefore, the double jeopardy guaranties would prohibit convicting him of child molestation for the same act for which he was convicted of child rape.

Here, though, the State never argued that Salavea's acts of rape simultaneously constituted acts of molestation; rather, the State argued that Salavea committed two different crimes based on different acts. During closing argument, the State argued that Salavea committed child molestation by touching R.U.T.'s and R.K.T.'s penises with his hands, rubbing his penis against their behinds, and rubbing his penis against their penises. In contrast, the State argued that Salavea committed rape when he took other action, namely: (1) by putting his mouth on R.U.T.'s and R.K.T.'s penises and also (2) by putting his penis in R.U.T.'s and R.K.T.'s anuses.

The testimony at trial supported the distinction between acts that constitute molestation and acts that constitute rape. Salavea was convicted of one count of child molestation of R.U.T., and testimony supported that separate from the acts constituting rape, Salavea touched R.U.T.'s "private" with his hands and then touched his own until he ejaculated. RP at 331. Salavea was convicted of one count of child molestation of R.K.T., and testimony supported that separate from the acts constituting rape, Salavea put his hand in R.K.T.'s pants, and held and squeezed his "private." RP at 336.

No. 42863-6-II

The evidence amply supports conviction of Salavea on two counts of child molestation for acts that do not constitute child rape. Therefore, even if these instructions made molestation a lesser included offense of child rape, he has not shown that he was convicted of child molestation for the same act for which he was convicted of child rape. Nor has he met his burden of proving actual rather than possible prejudice by a preponderance of the evidence. As noted, even without the evidence that showed rape, the jury had sufficient evidence from which it could find molestation.

The PRP is denied.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, J.

We concur:

HUNT, J.

JOHANSON, A.C.J.

13