# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51519-9-II |
| Respondent, | |
| v. | |
| JEFFREY L. BUTTERFIELD, | PUBLISHED IN PART OPINION |
| Appellant. | |

MELNICK, P.J. — Jeffrey Butterfield appeals his eight convictions for two counts each of rape of a child in the first degree, rape of a child in the second degree, rape of a child in the third degree, and incest in the first degree. The crimes relate to the sexual abuse of Butterfield's twin daughters, AB1 and AB2, over the course of their childhood.

In the published portion of this opinion, we address Butterfield's argument that the trial court erred in imposing an exceptional sentence. We agree that the court imposed a sentence unauthorized by the jury's findings. In the unpublished portion of this opinion, we address Butterfield's other arguments, in which he contends that he received ineffective assistance of counsel and that the trial court imposed unauthorized legal financial obligations (LFOs).

We reverse Butterfield's exceptional sentence and remand for resentencing. We otherwise affirm.

FACTS

Born in 1989, AB1 and AB2 are twins. Butterfield, their biological father, sexually abused them from the time they were four or five years old until they were sixteen years old.

The State charged Butterfield with two counts each of rape of a child in the first degree, rape of a child in the second degree, rape of a child in the third degree, and incest in the first degree. For each of the four crimes, one count related to AB1 and one count related to AB2.

For each count, the State alleged an aggravating factor in the information that the "offense was part of an ongoing pattern of psychological, physical, or sexual abuse of the same victim manifested by multiple incidents over a prolonged period of time and [that it would] ask for an exceptional sentence outside the standard range upon [Butterfield's] conviction." Clerk's Papers (CP) at 64-68. The State cited RCW 9.94A.535(i); however, the language followed RCW 9.94A.535(3)(h)(i)[1] but omitted that the offense involved domestic violence or stalking.

Butterfield pled not guilty, and the case proceeded to trial. At the conclusion of trial, the court instructed the jury on all eight counts. It also gave the jury special verdict forms for all counts, which asked the question: "Was the crime part of an ongoing pattern of psychological, physical, or sexual abuse of the same victim manifested by multiple incidents over a prolonged period of time?" CP at 86-100. This language also followed RCW 9.94A.535(3)(h)(i), but again omitted that the offense involved domestic violence or stalking.

---

[1] Before *Blakely v. Washington*, 542 U.S. 296, 305, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), aggravating factors could be found by a trial court, and furthermore, RCW 9.94A.535's list of aggravating was merely illustrative, not exclusive. *Blakely* clarified that this practice was unconstitutional. 542 U.S. at 305. In response to *Blakely*, the legislature amended RCW 9.94A.535(3) such that the list of aggravating factors became exclusive and had to be found by a jury beyond a reasonable doubt. *See* LAWS OF 2005, ch. 68, §§ 1, 3.

The jury convicted Butterfield on all counts. Additionally, the jury answered in the affirmative on each of the special verdict forms.

The court sentenced Butterfield to an exceptional sentence of 1,520 months. It sentenced Butterfield to the statutory maximum on each count and ran the counts consecutive to each other.

The court entered findings of fact and conclusions of law supporting the exceptional sentence. One finding stated, "The jury unanimously found beyond a reasonable doubt that [each count] . . . was part of an ongoing pattern of sexual abuse of the same victim under the age of eighteen years manifested by multiple incidents over a prolonged period of time." CP at 131-32. The court cited RCW 9.94A.535(2)(g).[2] Butterfield appeals.

## ANALYSIS

### I. EXCEPTIONAL SENTENCE

Butterfield argues that we should reverse his exceptional sentence because the trial court, not the jury, made the factual finding necessary to impose the exceptional sentence. We agree.

RCW 9.94A.535 includes numerous aggravating factors that, if found, allow the trial court to impose an exceptional sentence. Most of these circumstances must be "prove[n] to a jury beyond a reasonable doubt." RCW 9.94A.537(3); *see* RCW 9.94A.535(3)(g)-(h); *Blakely v. Washington*, 542 U.S. 296, 301, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). "[U]nder both the Sixth Amendment to the United States Constitution and article I, sections 21 and 22 of the Washington Constitution, the jury trial right requires that [the sentence imposed by the trial court] be authorized by the jury's verdict." *State v. Williams–Walker*, 167 Wn.2d 889, 896, 225 P.3d 913 (2010).

---

[2] RCW 9.94A.535(2)(g) only existed until 2005. We presume that the court intended to cite (3)(g).

RCW 9.94A.535(3) is an exclusive list of aggravating factors that must be submitted to and found by a jury before a court may consider imposing an exceptional sentence. One aggravating factor requires a jury to find that an "offense was part of an ongoing pattern of sexual abuse of the same victim under the age of eighteen years manifested by multiple incidents over a prolonged period of time." RCW 9.94A.535(3)(g). Another aggravating factor requires a jury to find that an "offense involved domestic violence, as defined in RCW 10.99.020, or stalking, as defined in RCW 9A.46.110, and . . . [t]he offense was part of an ongoing pattern of psychological, physical, or sexual abuse of a victim or multiple victims manifested by multiple incidents over a prolonged period of time." RCW 9.94A.535(3)(h)(i).

Here, the State alleged that Butterfield's "crime[s were] part of an ongoing pattern of psychological, physical, or sexual abuse of the same victim manifested by multiple incidents over a prolonged period of time." CP at 64-68. This allegation largely followed RCW 9.94A.535(3)(h)(i). However, the charging language omitted a statutory element, which requires a jury to find, along with the above, that the offense involved "domestic violence" as defined in RCW 10.99.020 or "stalking" as defined in RCW 9A.46.110. RCW 9.94A.535(3)(h).

Like the charging document, the jury instructions and special verdict forms also omitted the domestic violence or stalking element. The court instructed the jury that if it found Butterfield guilty, then it must determine "[w]hether the crime was part of an ongoing pattern of psychological, physical, or sexual abuse of the same victim manifested by multiple incidents over a prolonged period of time." CP at 77-80, 82. The court then provided the jury with special verdict forms, which asked the question: "Was the crime part of an ongoing pattern of psychological, physical, or sexual abuse of the same victim manifested by multiple incidents over a prolonged period of time?" CP at 86-100. The jury answered in the affirmative.

Because the court instructed the jury using an incorrect instruction, the jury never found that Butterfield's crimes constituted domestic violence or stalking. As a result, the jury did not find all of the elements of a statutory aggravating factor beyond a reasonable doubt. RCW 9.94A.535(3)(h).

In imposing the exceptional sentence, the trial court's findings of fact and conclusions contained a different error from that contained in the information, jury instructions, and special verdicts. The court found: "The jury unanimously found beyond a reasonable doubt that [each count] . . . was part of an ongoing pattern of sexual abuse of the same victim under the age of eighteen years manifested by multiple incidents over a prolonged period of time." CP at 131-32. This language followed RCW 9.94A.535(3)(g), not (3)(h)(i). Thus, in imposing the exceptional sentence, the court relied on a different statutory aggravating factor than the incomplete one charged by the State and the incomplete one on which it instructed the jury and which the jury found.

In short, the charging documents, jury instructions, and special verdict forms each contained errors. Another error occurred at sentencing when the court gave Butterfield an exceptional sentence based on findings the jury did not make. As a result of these errors, the court did not have the authority to impose an exceptional sentence and erred by imposing one.

Although the State concedes that all of the above errors occurred, it argues that the errors were harmless. The State applies its harmless error analysis without first discussing whether harmless error applies at all. We conclude that a harmless error analysis is inapplicable in Butterfield's situation.

In *Williams–Walker*, the court consolidated three cases. 167 Wn.2d at 892. In each case, the State charged the defendants with firearm enhancements; however, the court submitted special

verdict forms to each jury for deadly weapon enhancements. *Williams–Walker*, 167 Wn.2d at 893-94. The juries then answered the special verdict forms in the affirmative, finding that the defendants were armed with deadly weapons. *Williams–Walker*, 167 Wn.2d at 893-94. Notwithstanding the juries' special verdicts, at each defendant's sentencing, the court imposed the more severe firearm enhancement. *Williams–Walker*, 167 Wn.2d at 893-94, 898.

The court concluded that error had occurred. "When the jury is instructed on a specific enhancement and makes its finding, the sentencing judge is bound by the jury's finding." *Williams–Walker*, 167 Wn.2d at 899.

The court reasoned that the juries' findings authorized in the special verdicts did not support the sentencing enhancements imposed by the courts and violated the defendants' constitutional rights under article 1, sections 21 and 22. *Williams–Walker*, 167 Wn.2d at 899-900. After determining that the imposed enhancements constituted error, the court next concluded that a harmless error analysis was inapplicable. *Williams–Walker*, 167 Wn.2d at 902. It noted that "the error was made, not in the jury instruction, but in the trial court's imposition of a sentence." *Williams–Walker*, 167 Wn.2d at 900. By so acting, the trial court exceeded its authority in sentencing, and when the court imposes a sentence unsupported by a jury's findings, that error "can never be harmless." *Williams–Walker*, 167 Wn.2d at 902.

In *Williams–Walker*, the court specified that no error existed in the charging document, in the jury instructions, or in the jury findings. 167 Wn.2d at 901.

In the present case, the court not only imposed an exceptional sentence above the standard range based on a finding the jury did not make, but unlike *Williams–Walker*, error also existed in the charging document, in the jury instructions, and in the jury's findings. The State charged an aggravating factor but did not include all of the statutory elements of the aggravating factor. The

court instructed the jury on the same aggravating factor the State charged. It also omitted an element. As a result, the jury did not find all the elements of the statutory aggravating factor. Compounding these errors, the trial court sentenced the defendant to an exceptional sentence above the standard range. In so doing, it made findings of fact and conclusions of law. Its explicitly stated findings involved an aggravating factor not charged and not found. Therefore, the trial court imposed a sentence unsupported by the jury's findings. We conclude that a harmless error analysis is inapplicable because, under *Williams–Walker*, such an error can never be harmless.

The State relies on *State v. Brown*, 147 Wn.2d 330, 339, 341, 58 P.3d 889 (2002), to support its harmless error argument; however, that case is distinguishable because *Brown* involved a missing element from the "to-convict" instruction and did not involve a sentence that was unsupported by the jury's verdict.

Because the court sentenced Butterfield in excess of its authority and in violation of Butterfield's constitutional rights, we reverse his exceptional sentence and remand for resentencing.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

## ADDITIONAL FACTS

I.   BACKGROUND

Butterfield sexually abused AB1 and AB2 for many years. He abused AB1 from age 4 to 16 and abused AB2 from age 5 to 16.

When the girls were 16 years old, Child Protective Services (CPS) and the police became aware of the sexual abuse. AB1 and AB2 were removed from Butterfield's care. However, AB1

and AB2 recanted, telling the police that Butterfield had not sexually abused them, and the police did not press charges.

Many years later, the girls told the police about the abuse. The State then charged Butterfield with multiple crimes.

II.    TRIAL

A.    Mental Health

During a pretrial hearing, the court ruled that Butterfield could ask AB1 and AB2 about their mental health problems, but it limited his questions. AB1 and AB2 then testified about their mental health histories. Butterfield did not call an expert to discuss how their mental health could impact their memory and subsequent credibility.

B.    Prior Instances of Abuse

During trial, the prosecutor asked AB2 to describe her childhood household situation. AB2 stated that it involved "[a] lot of fighting, arguing." 1 Report of Proceedings (RP) at 29. Butterfield objected, stating that the material was "very dangerous" and that an offer of proof should be made before the evidence was offered. 1 RP at 29. The court said, "Let's go question and answer carefully through it, rather than just open-ended answers." 1 RP at 29.

AB2 then testified about specific instances of prior abuse by Butterfield. She discussed how Butterfield yelled at her and hit her. She described how on one occasion Butterfield picked her up from school and whipped her as she walked from the house's gate until she got to her room. Butterfield objected, and the court overruled the objection. AB2 described how on a different occasion she had told CPS about bruising on her legs. As a result of her disclosure, Butterfield physically assaulted her. Consequently, AB2 swore she "would never say a word again" because she feared that Butterfield would beat her. 1 RP at 31.

Both AB1 and AB2 described numerous other specific incidents of physical and psychological abuse throughout their childhood.

C.      Closing Argument

During the State's closing argument, the prosecutor highlighted AB1's and AB2's testimonies, discussing specific incidents of Butterfield's sexual and physical abuse. The prosecutor argued how Butterfield's physical abuse explained AB1's and AB2's delayed reporting.

D.      Sentencing

After the jury found Butterfield guilty on all counts, the court sentenced him. The court found Butterfield indigent. It imposed numerous LFOs, including a criminal filing fee and DNA database fee. Butterfield appeals.

ANALYSIS

I.      INEFFECTIVE ASSISTANCE OF COUNSEL

Butterfield argues that he received ineffective assistance of counsel when his attorney failed to call an expert to challenge the victims' credibility and when he failed to object to prior bad act evidence. We disagree.

A.      Legal Principles

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011).

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on a claim of ineffective assistance of counsel, the defendant must show both that defense counsel's representation was deficient and that the

9

deficient representation prejudiced the defendant. *Grier*, 171 Wn.2d at 32-33. If either prong is not satisfied, the defendant's claim fails. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 673, 101 P.3d 1 (2004). Additionally, when the basis of the ineffective assistance argument is failure to object to evidence, the appellant must also show that the evidence would likely have been excluded had an objection been made. *State v. Saunders*, 91 Wn. App. 575, 578, 958 P.2d 364 (1998); *see In re Pers. Restraint of Lui*, 188 Wn.2d 525, 547, 397 P.3d 90 (2017).

Representation is deficient if, after considering all the circumstances, the performance falls "'below an objective standard of reasonableness.'" *Grier*, 171 Wn.2d at 33 (quoting *Strickland*, 466 U.S. at 688). "The burden is on a defendant alleging ineffective assistance of counsel to show deficient representation based on the record established in the proceedings below." *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). We do not consider matters outside the trial record. *State v. Linville*, 191 Wn.2d 513, 525, 423 P.3d 842 (2018).

To show prejudice, a defendant must establish that "there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

B.     Failure to Call Expert Witness

Butterfield argues that he received ineffective assistance of counsel when his attorney failed to call an expert witness. He contends that an expert witness would have cast doubt on AB1's and AB2's credibility due to their mental health issues and argues that no reasonable trial tactic explains his counsel's decision. We disagree.

The record fails to demonstrate that any expert was available to use AB1's and AB2's mental health histories to cast doubt on their ability to recall information at trial. Nor does this

10

record reflect counsel's reasons for not presenting expert testimony. Therefore, if an expert was available, a personal restraint petition is the proper vehicle for Butterfield to make this argument. *Linville*, 191 Wn.2d at 525.

C.      Failure to Object to Evidence

Butterfield argues that he received ineffective assistance of counsel when his attorney did not object to inflammatory prior bad act evidence. We disagree.

Evidence of a person's prior bad acts is generally not admissible to prove that he acted in conformity with his character on a particular occasion. ER 404(b); *State v. Gresham*, 173 Wn.2d 405, 420, 269 P.3d 207 (2012). However, evidence of a person's prior acts may be admissible for other purposes, including to prove motive, opportunity, intent, or to explain a victim's delayed reporting. ER 404(b); *State v. Fisher*, 165 Wn.2d 727, 746, 202 P.3d 937 (2009).

In *State v. Wilson*, 60 Wn. App. 887, 888-89, 808 P.2d 754 (1991), the State charged the defendant with statutory rape in the second degree and indecent liberties. During trial, the State elicited testimony from the victim that, after the defendant began sexually abusing her, he also began physically abusing her. *Wilson*, 60 Wn. App. at 889. The defendant never physically abused the victim at the same time that he sexually abused her. *Wilson*, 60 Wn. App. at 889. "However, the victim testified that she was afraid to leave [the defendant's] home because she feared him and because he threatened to find her if she ever left." *Wilson*, 60 Wn. App. at 889. The defendant maintained his innocence and testified that he never sexually abused the victim. *Wilson*, 60 Wn. App. at 889.

On appeal, the defendant argued that the evidence of physical abuse was irrelevant and was also inadmissible under ER 403 and 404(b). *Wilson*, 60 Wn. App. at 890-91. The court disagreed.

The court first concluded that the evidence was relevant to rebut the defendant's claim that the sexual abuse did not occur. *Wilson*, 60 Wn. App. at 890. The court reasoned the defendant's denial "would have gained unwarranted credibility had the court prevented the victim from testifying that she never reported the abuse and was unable to resist or escape the abuse out of fear." *Wilson*, 60 Wn. App. at 890.

The court next rejected the defendant's ER 403 argument. It deferred to the trial court, which had balanced on the record and found that the evidence was admissible under ER 403. *Wilson*, 60 Wn. App. at 890-91.

Finally, the court concluded that the evidence was admissible under ER 404(b). *Wilson*, 60 Wn. App. at 891. The court reasoned that the "evidence of the assaults was offered to show something other than [the defendant's] . . . violent character." *Wilson*, 60 Wn. App. at 891. It was used "to explain the [victim's] delay in reporting the sexual abuse and to rebut the implication that the molestation did not occur." *Wilson*, 60 Wn. App. at 891.

Here, the facts are similar to those in *Wilson*. Butterfield testified at trial that he did not sexually abuse AB1 or AB2. Additionally, Butterfield attempted to undercut AB1's and AB2's credibility by pointing out how they had ample opportunities to disclose the sexual abuse yet chose not to.

We conclude that, had Butterfield objected to the admission of the prior bad act evidence, the trial court would likely have still admitted the evidence. As recognized in *Wilson*, evidence of the victims' physical abuse can be relevant and can satisfy ER 403 and 404(b). Because Butterfield has not shown that the evidence would likely have been excluded if his counsel had objected, we conclude that his ineffective assistance of counsel argument fails.

II.     LFOs

Butterfield argues that, due to the 2018 amendments to the LFO statutes, we should strike the criminal filing fee and the DNA database fee that the trial court imposed on him.

The State agrees that we should strike the provisions. We accept the State's concessions.

We remand for the trial court to reconsider the imposition of LFOs. On remand, the trial court should consider all of the LFOs in light of the 2018 amendments to the LFO provisions, Laws of 2018, ch. 269, and *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018).

We reverse Butterfield's exceptional sentence and remand for resentencing. We otherwise affirm.

Melnick, P.J.

We concur:

Sutton, J.

Glasgow, J.